Roy MOGEL, Todd D. Lindsay and Joseph R. Thorley, individually and on behalf of all others similarly situated, Plaintiffs,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, a subsidiary of UNUMPROVIDENT CORPORATION, Defendant.

Civil Action No. 07–10955–NMG.

United States District Court, D. Massachusetts.

Feb. 4, 2008.

Charles M. Delbaum, Stuart T. Rossman, Boston, MA, Jeffrey G. Casurella, Atlanta, GA, John C. Bell, Leroy W. Brigham, Bell & Brigham, Augusta, GA, M. Scott Barrett, Barrett & Associates, Bloomington, IN, for Plaintiffs.

Byrne J. Decker, Gavin G. McCarthy, William J. Kayatta, Jr., Pierce Atwood, Portland, ME, for Defendant.

### MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiffs Roy Mogel ("Mogel"), Todd Lindsay ("Lindsay") and Joseph Thorley ("Thorley")(collectively, "Plaintiffs"), in a putative class action, allege that the defendant UNUM Life Insurance Company of America ("UNUM"), violated the Employee Retirement Income Security Act, 29 U.S.C. 1001 *et. seq.* ("ERISA"). Specifically, Plaintiffs allege that UNUM engaged in prohibited transactions in violation of § 1106(b)(1) and did not pay death benefits in conformance with the terms of the Group Life Insurance Policy ("the Policy") in violation of § 1104(a)(1).

### I. *Background*

Plaintiffs were the beneficiaries of life insurance policies issued by UNUM. The terms of the policies provided that death

benefits would be paid in a lump sum to the beneficiaries unless the beneficiaries elected an alternative form of payment. At the time of payment of the claim, if the benefits to be paid exceed $10,000 (as they did for Plaintiffs), UNUM sets up a UNUM Life Insurance Co. of America Security Account ("Security Account") in the name of the beneficiary at a particular bank. UNUM sends the beneficiary a checkbook (rather than a check for the full amount) from which the beneficiaries may write checks for any amount greater than $250 up to the policy limit. The Security Accounts paid a fixed interest disclosed to the beneficiaries in information accompanying the checkbook but it was also disclosed that the interest rate could be changed monthly.

Plaintiffs contend that UNUM deposited no funds in the Security Accounts until presented with a check drawing on them and that it used the beneficiaries' funds for its own benefit in the interim. Although Plaintiffs each received the amount to which they were entitled by drawing on the Security Accounts over a period of time, they allege that the use of Security Accounts violated the policies' own terms and ERISA's exclusive benefit rule under 29 U.S.C. §§ 1104(a) and 1106(b).

Plaintiffs ask the court to declare that UNUM violated ERISA and was unjustly enriched and to order that UNUM hold in constructive trust all of the profits that it derived from the wrongful use of the Plaintiffs' assets (i.e., the difference between what UNUM made and the fixed interest to be paid on the account) and to disgorge all of the illicit profits. Plaintiffs also ask for appropriate injunctive relief, costs and fees.

On May 18, 2007, Plaintiffs filed their complaint. On July 23, 2007, UNUM filed a Motion to Dismiss which was followed in monthly intervals by opposition, reply and sur-reply briefs.

## II. *Motion to Dismiss (Docket No. 4)*

UNUM makes four arguments in its motion to dismiss. It argues: 1) its use of Security Accounts is the equivalent of making lump sum payments under the terms of the policy, 2) Plaintiffs may not sue under § 1132(a)(3) for appropriate equitable relief because they could have brought claims under § 1132(a)(1)(B) to enforce the terms of the policies, 3) under ERISA's "guaranteed benefit policy" exemption, the funds in question were not Plan assets and 4) Plaintiffs cannot impose a trust over assets to which UNUM gave them full right, title and access. Because the motion can be resolved from consideration of the first three arguments, the fourth will not be addressed.

### A. Legal Standard

 A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell,* 160 F.3d 67, 72 (1st Cir.1998)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss

the complaint must be denied. *See Nollet*, 83 F.Supp.2d at 208.

### B. Checkbooks as a Lump Sum Payment

UNUM contends that the checkbook it sent to beneficiaries functioned as a "lump sum" payment. That contention has importance for two independent reasons. First, if the checkbook was not a "lump sum payment" and if, by writing several smaller checks rather than one for the entire death benefit, the beneficiaries did not choose an alternative form of payment, UNUM has failed to abide by the terms of the Policy in violation of ERISA § 1104(a)(1). That claim is barred for reasons discussed below, however, and Plaintiffs admit that it is not their principal claim.

Second, if the checkbook, in and of itself, was a lump sum payment, then UNUM fulfilled its guarantee under the Policy and the relationship between UNUM and Plaintiffs would no longer be governed by ERISA but rather was transformed into a debtor-creditor relationship. Both of Plaintiffs' claims would therefore fail.

■ Not surprisingly, there is no authority on whether the conveyance of a checkbook qualifies as a lump sum payment. UNUM cites a Black's Law Dictionary definition, which states that such a payment is a "payment of a large amount all at once, as opposed to smaller payments over time." UNUM also urges the Court to put substance over form in interpreting the phrase. Plaintiffs, on the other hand, stress that when interpreting insurance policies, "straightforward language ... should be given its natural meaning". *Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 268 (1st Cir.1994) (citations omitted). They argue that issuance of a checkbook with which to access an account gives the beneficiary the means to obtain payment but does not constitute payment itself.

Plaintiffs have the more compelling argument. When the plan participants enrolled in the life insurance plan that offered a lump sum payment, they would have reasonably expected their beneficiaries to receive the benefit amount all at once in the form of a check or at least as a deposit into an account of their own choosing. UNUM, on the other hand, by setting up the Security Accounts, created a financial arrangement for the Plaintiffs to which neither they nor the plan participants had agreed. The difference between delivery of a check and a checkbook, perhaps due simply to human inertia, is the difference between UNUM retaining or UNUM divesting possession of Plaintiffs' funds. That is a fundamental difference and thus the establishment of the Security Accounts and the delivery of the checkbook is not the equivalent of providing a lump sum payment.

### C. Bringing Suit Under § 1132(a)(3)

■ UNUM argues that Plaintiffs may not bring suit under § 1132(a)(3) of ERISA because a remedy was available under § 1132(a)(1)(B). ERISA's civil enforcement section is contained in § 502, which is codified at 29 U.S.C. § 1132. Section 1132(a)(3) of ERISA states that a participant, beneficiary or fiduciary may initiate a civil action

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

That provision is a catchall that was intended to "act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not

elsewhere adequately remedy." *Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

■ UNUM argues that Plaintiffs could have brought suit under § 1132(a)(1)(B) and therefore they are barred from bringing suit under § 1132(a)(3). Section 1132(a)(1)(B) permits a participant or beneficiary

> to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

If UNUM did not pay death benefits in conformance with the terms of the Policy, Plaintiffs could have brought suit under § 1132(a)(1)(B), which expressly allows beneficiaries "to enforce ... rights under the terms of the plan". The First Circuit has made clear that

> if a plaintiff can pursue benefits under the plan pursuant to Section (a)(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3).

*LaRocca v. Borden, Inc.* 276 F.3d 22, 28–29 (1st Cir.2002) (citations omitted). Consequently, Plaintiffs are barred from asserting their claim under § 1132(a)(3) that UNUM did not pay the death benefits in conformity with the terms of the Policy.

■ Plaintiffs are not barred, however, from asserting their claim for breach of fiduciary duty. UNUM argues that § 1132(a)(1)(B) bars all of Plaintiffs' claims because Plaintiffs had the opportunity to recover their benefits under that provision. UNUM does not explain, however, how UNUM's alleged breach of fiduciary duty could be remedied under § 1132(a)(1)(B). Under that claim, Plaintiffs do not contest the failure to make a lump sum payment but rather complain that UNUM used their money for its own benefit. Because the checkbook did not serve as a lump sum payment, UNUM continued to hold Plain-

tiffs' insurance proceeds in the Security Accounts. Plaintiffs correctly point out that § 1132(a)(1)(B) does not provide a cause of action to remedy the alleged breach of UNUM's fiduciary duty because the policies do not address who is entitled to profits earned on death benefits retained by UNUM.

In any event, it is not the case, as UNUM contends, that if a plaintiff brings a claim under § 1132(a)(1)(B), he may not bring another claim under § 1132(a)(3). In each of the cases UNUM cites, the plaintiff seeks to use § 1132(a)(3) to enforce the provisions of the relevant plan (i.e., require the defendant to provide benefits available under the plan) rather than to disgorge profits made by the defendant in a breach of an alleged fiduciary duty wholly apart from any improper refusal of benefits. *See, e.g., Ogden v. Blue Bell Creameries U.S.A., Inc.,* 348 F.3d 1284 (11th Cir.2003)(holding that plaintiffs may not bring claim for defendant's alleged failure to provide benefits under § 1132(a)(3) even though a § 1132(a)(1)(B) suit is barred by res judicata); *LaRocca v. Borden, Inc.,* 276 F.3d 22, 29 (1st Cir.2002)(holding that once reinstated to the plan, plaintiffs may rectify any failure of the defendant to provide benefits in a § 1132(a)(1)(B) suit and therefore cannot also get equitable relief for the failure to provide benefits under § 1132(a)(3)). Plaintiffs could not claim that UNUM improperly benefitted from the retained benefits under § 1132(a)(1)(B) and, therefore, may pursue a remedy for breach of fiduciary duty under § 1132(a)(3).

### D. UNUM Security Accounts as Plan Assets

■ A person is a fiduciary with respect to an employee benefit plan

> to the extent (i) he exercises any discretionary authority or discretionary con-

trol respecting management of such plan or exercises any authority or control respecting management or disposition *of its assets* . . .

29 U.S.C. § 1002(21)(A)(emphasis added). UNUM contends that the funds in the Security Accounts were not plan assets and therefore it owed no fiduciary duty to Plaintiffs with respect to those funds. It initially argues that the money in the Security Accounts was Plaintiffs' assets. That argument is incorrect because delivery of the checkbook was not a lump sum payment and, therefore, the money in the account remained benefits due to the beneficiary (and thus plan assets).

UNUM also contends that money in the Security Accounts was not plan assets under ERISA's "guaranteed benefit policy" exception. ERISA does not define "plan assets" except that one of its provisions exempts from the assets of a covered plan the general account of an insurer that issues a "guaranteed benefit policy". 29 U.S.C. § 1101(b)(2).

■ Plaintiffs argue that the guaranteed benefit exemption does not apply to the Security Accounts because 1) the exemption does not apply to plan administration after benefits become payable, 2) the Security Accounts are separate accounts and therefore do not fit the definition of a guaranteed benefit policy and 3) UNUM has failed to show that it has complied with the requirements for insurers seeking the exemption.

First, Plaintiffs assert that the guaranteed benefit exemption applies to insurer's management of assets during the accumulation phase of an insurance contract but does *not* apply to plan administration after benefits become payable. They cite *Ochsner Health Plan v. N. La. Physician Hosp. Org., Inc.*, 2002 WL 31844903, *7 (E.D.La.2002) for that proposition. The court in that case distinguishes, however, not between an accumulation phase and a

benefits pay-out phase to determine when fiduciary duties attach but rather between managing assets and administrating the plan. An insurance company may have fiduciary obligations with respect to managing a plan and yet not have a fiduciary role as to the monies paid in consideration for the plan. *Id.* That is true regardless of whether the policy is in the accumulation phase or the benefits pay-out phase of the plan. Plaintiffs also cite a Ninth Circuit case that does not address the guaranteed benefit exemption and therefore does not provide support for the proposition that the exemption does not apply once benefits become payable. *See Patelco Credit Union v. Sahni,* 262 F.3d 897 (9th Cir.2001). Consequently, the guaranteed benefit policy exemption applies to benefits after they become payable.

Second, Plaintiffs note that the guaranteed benefit exemption does not apply because the Security Accounts were separate accounts. ERISA defines a "guaranteed benefit policy" to include "any surplus in a separate account, but excludes any other portion of a separate account." 29 U.S.C. § 1101(b)(2)(B). The letters that UNUM sent to Plaintiffs with regard to the Security Accounts explicitly state that their benefits will be held in a separate "UNUM Security Account". Not being surplus, Plaintiffs argue that the money in those accounts do not fall under the definition of a guaranteed benefit policy and therefore are plan assets. The Plaintiffs also rely on the definition provided by the Supreme Court in *John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank,* 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) in which the Supreme Court states that the guaranteed benefit policy exemption applies to funds obtained by insurers

"solely" by reason of the issuance of "an insurance policy or contract" that provides for benefits "the amount of which are guaranteed," and even then it is only

"to the extent" that [the policy] provides for such benefits that the § 1101(b)(2)(B) exemption applies.

*Id.* at 96, 114 S.Ct. 517.

UNUM responds that Plaintiffs allege in their complaint that UNUM did not hold the money in a separate account and therefore that clause of the definition does not apply to UNUM. ERISA defines a separate account as

an account established or maintained by an insurance company under which income, gains, and losses, whether or not realized, from assets allocated to such account, are, in accordance with the applicable contract, credited to or charged against such account without regard to other income, gains, or losses of the insurance company.

29 U.S.C. § 1002(17). This definition leaves Plaintiffs in a catch 22. If the Security Accounts were "separate accounts", they were, by definition, credited with all gains and losses from the assets in those Accounts and the Plaintiffs cannot allege a breach of fiduciary duty. Alternatively, the Security Accounts were not separate accounts in which case the guaranteed benefit exemption applies and UNUM was not a fiduciary with respect to the assets in those Accounts. In other words, Plaintiffs can allege no set of facts that state a claim for breach of fiduciary duty because whether or not Plaintiffs allege the Security Accounts were "separate accounts", UNUM did not breach such a duty.

Third, Plaintiffs apparently contend that even if UNUM kept the Plaintiffs' money in its general account, it has not shown that it met the requirements detailed in 29 C.F.R. § 2550.401c–1 in order to qualify for the guaranteed benefit exemption. Those requirements apply only to a "Transition Policy", however, defined in the regulations as "[a] policy or contract of insurance (other than a guaranteed benefit policy)...." 29 C.F.R. § 2550.401c–1(h)(6)(i). Because the policy in this case was one for guaranteed benefits, those requirements do not apply to UNUM. Plaintiffs' benefits were guaranteed and therefore if UNUM kept the benefits in its general account, UNUM qualifies for the "guaranteed benefit policy" exemption.

Because either the "guaranteed benefit policy" exemption applies to the Security Accounts (if they were not separate accounts) or UNUM could not have participated in the alleged breach of fiduciary duty (if the Security Accounts were separate accounts), Defendant's motion to dismiss will be allowed.

### ORDER

In accordance with the foregoing, Defendant's Motion to Dismiss (Docket No. 4) is **ALLOWED**.

**So ordered.**