# United States Court of Appeals
## For the First Circuit

No. 08-1334

ROY MOGEL, ET AL.

Plaintiffs, Appellants,

v.

UNUM LIFE INSURANCE CO. OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, District Judge]

Before

Torruella and Boudin, Circuit Judges,
and Schwarzer,[*] District Judge.

Stuart T. Rossman with whom Charles M. Delbaum and National Consumer Law Center were on brief for appellants.
Byrne J. Decker with whom William J. Kayatta, Jr., Gavin G. McCarthy, and Pierce Atwood LLP were on brief for appellee.

November 6, 2008

---

[*]Of the Northern District of California, sitting by designation.

**SCHWARZER, District Judge**.  This is an appeal from a judgment of the district court granting a motion to dismiss plaintiffs' action against UNUM Life Insurance Company of America ("UNUM").  Plaintiffs Roy Mogel, Todd D. Lindsay and Joseph R. Thorley, who are beneficiaries under employee welfare benefit plans, brought this action on behalf of themselves and a class of beneficiaries.  They allege breaches of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104(a)(4) and 1106(b).  Because we conclude that plaintiffs have stated a valid claim under ERISA, we vacate the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The district court dismissed the complaint for failure to state a claim.  Our review is therefore de novo.  Centra Medico del Turabo v. Feliciano de Melecio, 405 F.3d 1, 5 (1st Cir. 2005).  We assume the truth of all well pleaded facts.  Id.

The complaint alleges that plaintiffs were beneficiaries[1] of group life insurance policies issued by UNUM.[2]  These policies are "employee welfare benefit plans" within the meaning of

_____

[1]  29 U.S.C. § 1002(8) defines "beneficiary" as a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."

[2]  The claims arise under policies issued to Xerox Imaging Systems, Inc., Sideshow USA and South Shore Mental Health Center, Inc.

29 U.S.C. § 1002(1) and (3).  Under 29 U.S.C. § 1002(21)(A), UNUM is a fiduciary with respect to the policies.  The policies provide that "all benefits payable . . . will be paid as soon as the Insurance Company receives proof of claim acceptable to it" and "[u]nless otherwise elected, payment for loss of life will be made in one lump sum."  Plaintiffs submitted valid claims for death benefits to UNUM in accordance with the terms of the policies.  In response, UNUM approved the claims and mailed each plaintiff a checkbook and a letter.  The letter advised that (1) plaintiffs' death benefits plus applicable interest had been deposited in a UNUM Security Account, (2) plaintiffs could write checks from $250 up to the balance in the account, and (3) interest would be paid on the accounts at a variable rate.

In this action plaintiffs charge that UNUM breached its fiduciary duties in two respects:  by failing to tender a full lump sum payment for the amount of the claim in violation of 29 U.S.C. § 1104(a)(1) which requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," and by wrongfully converting to its own use and benefit the claim amounts owed to plaintiffs in violation of 29 U.S.C. § 1106(b)(1) which prohibits a fiduciary with respect to a plan to "deal with the assets of the plan in his own interest."

The district court granted UNUM's motion to dismiss the

action. It held that either UNUM's Security Accounts were "separate accounts" as defined in 29 U.S.C. § 1002(17)[3] in which case "they were, by definition, credited with all gains and losses from the assets in those Accounts and the Plaintiffs cannot allege a breach of fiduciary duty."[4] 540 F. Supp. 2d 258, 265 (D. Mass. 2008). Alternatively, if the Security Accounts were not "separate accounts," they fell within the guaranteed benefit exemption under 29 U.S.C. § 1101(b)(2)(B).[5] Id. This timely appeal followed. We have subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), and appellate jurisdiction under 28 U.S.C. § 1291.

**ANALYSIS**

The question we must decide is whether UNUM acted as an

---

[3] 29 U.S.C. § 1002(17) states: "The term 'separate account' means an account established or maintained by an insurance company under which income, gains, and losses, whether or not realized, from assets allocated to such account, are, in accordance with the applicable contract, credited to or charged against such account without regard to other income, gains, or losses of the insurance company."

[4] Because UNUM does not claim that the Security Accounts were "separate accounts," we do not reach this portion of the district court's holding.

[5] 29 U.S.C. § 1101(b)(2)(B) states: "The term 'guaranteed benefit policy' means an insurance policy or contract to the extent that such policy or contract provides for benefits the amount of which is guaranteed by the insurer. Such term includes any surplus in a separate account, but excludes any other portion of a separate account."

ERISA fiduciary when, by establishing the Security Accounts, it retained and invested death benefits presently due beneficiaries under UNUM's ERISA plan and not paid until drawn down as beneficiaries wrote checks on their Security Accounts.

UNUM contends first that the conduct that is the subject of this appeal had nothing to do with UNUM's fiduciary function and could not have occurred until after that function had been performed. It argues that it acted as a fiduciary under UNUM's benefit plan when it determined that plaintiffs were entitled to benefits. But it then performed the non-discretionary ministerial task of "paying the benefits," giving plaintiffs full power to use the funds as they saw fit.

UNUM's contention rests on quicksand. The district court found, and we agree, that delivery of the checkbook did not constitute a "lump sum payment" called for by the policies. As the district court put it, "[t]he difference between delivery of a check and a checkbook . . . is the difference between UNUM retaining or UNUM divesting possession of Plaintiffs' funds." 540 F. Supp. 2d at 262. Thus UNUM cannot be said to have completed its fiduciary functions under the plan when it set up the Security Accounts and mailed the checkbooks, retaining for its use the funds due until they were withdrawn. UNUM's theory that its mailing of the checkbooks to the beneficiaries and their acceptance formed a unilateral contract is unpersuasive, for until the beneficiaries

received the lump sum payments to which they were entitled, UNUM remained obligated to carry out its fiduciary duty under the plan.

More importantly, when UNUM says that plaintiffs had been paid, referring to "the sums already deemed to belong to Plaintiffs," it obscures reality. Until a beneficiary draws a check on the Security Account, the funds represented by that check are retained by UNUM and UNUM had the use of the funds for its own benefit.[6] To say that the funds are "deemed to belong" to the beneficiaries obscures the reality that UNUM had possession of them and enjoyed their use. Commonwealth Edison Co. v. Vega, 174 F.3d 870, 872-73 (7th Cir. 1999), is squarely on point. In that case, Illinois sought to apply its Uniform Disposition of Unclaimed Property Act to funds payable under Com Ed's pension plan but not yet claimed by a plan beneficiary. The plan issued checks to beneficiaries which frequently were not cashed or deposited. The Seventh Circuit held that ERISA preempted the Act, reasoning that "until the check to the beneficiary is actually presented to the plan for payment through the banking system, and paid, the money due to the beneficiary is an asset of the plan." Id. at 873. So here the sums due plaintiffs remain plan assets subject to UNUM's fiduciary obligations until actual payment.

---

[6] While UNUM says it paid an agreed amount of interest to the beneficiaries, the crux of appellants' claim is that UNUM failed to credit the accounts with the full amount UNUM earned investing the funds. Because this case is still at the dismissal stage, we must accept the appellants' argument as being true.

As a second string to its bow, UNUM advances the argument that even if its use of the beneficiaries' funds were subject to ERISA's fiduciary duties, "Congress," it says, "chose to exempt insurers from fiduciary duties in their handling of funds used to pay guaranteed ERISA benefits."  Again, UNUM paints with too broad a brush.

The guaranteed benefit policy exemption by its terms does not exempt insurers from fiduciary duties.  What it does is to exclude an insurance policy from plan assets "to the extent that such policy . . . provides for benefits the amount of which is guaranteed by the insurer."  29 U.S.C. §1101(b)(2)(B).  Speaking of this provision, the Supreme Court has observed:

> [E]ven were we not inclined, generally, to tight reading of exemptions from comprehensive schemes of this kind, . . . Congress has specifically instructed, by the words of limitation it used, that we closely contain the guaranteed benefit policy exclusion.

John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 97 (1993) (internal citations omitted).  That exemption (or exclusion) was intended to free insurance companies from the potential conflict between managing plan assets for the benefit of participants and beneficiaries, on one hand, and, on the other, the operation of the insurer's general account which requires the equitable spreading of risks among all policy holders.  See Trustees of Laborers' Local No.72 Pension Fund v. Nationwide Life

<u>Ins. Co.</u>, 783 F. Supp. 899, 904 n.7 (D.N.J. 1992). It does not alter the fiduciary duties imposed on an insurer with respect to the management and administration of a plan as opposed to the oversight of investment policy and has no application here. Specifically, once an insured's death occurs, we are no longer concerned with the management of plan assets in an insurance company's general account (which is all the guaranteed benefit exemption covers) but rather with the insurance company's duties with respect to the payment that is now due the beneficiary. ERISA spells out those duties, providing that a person is a fiduciary with respect to an employee benefit plan

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). UNUM's disposition to the beneficiaries of benefits under the plan falls comfortably within the scope of ERISA's definition of fiduciary duties with respect to plan administration. <u>See</u> <u>Varity Corp.</u> v. <u>Howe</u>, 516 U.S. 489, 502 (1996).

**CONCLUSION**

In sum, the euphemistically named "Security Account,"

- 8 -

accompanied with a checkbook, was no more than an IOU which did not transfer the funds to which the beneficiaries were entitled out of the plan assets and hence UNUM remained a fiduciary with respect to those funds.

Because plaintiffs have stated a viable claim of breach of fiduciary duties, we need go no further to address their misrepresentation claim.

Vacated and remanded.  No costs are awarded.