In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3870

ZENA PHILLIPS,

*Plaintiff-Appellant*,

*v.*

THE PRUDENTIAL INSURANCE COMPANY OF
AMERICA and PRUCO LIFE INSURANCE COMPANY,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 11-cv-0058-DRH—**David R. Herndon**, *Chief Judge*.

ARGUED APRIL 9, 2012—DECIDED MAY 6, 2013

Before FLAUM and HAMILTON, *Circuit Judges*, and
FEINERMAN, *District Judge*.*

FEINERMAN, *District Judge*. Plaintiff Zena Phillips was
a beneficiary of a life insurance policy taken out by her
fiancé, Michael Strang, and issued by Defendant Pruco

---

* The Honorable Gary Feinerman, of the Northern District of
Illinois, sitting by designation.

Life Insurance Company, a subsidiary of Defendant Prudential Life Insurance Company of America (together, "Prudential"). When Strang died, Prudential informed Phillips that the default method for paying the claim was the "Alliance Account settlement option." The Alliance Account is what the insurance industry calls a "retained asset account," under which the insurer, instead of paying a lump-sum death benefit, creates an interest-bearing account for the beneficiary and sends her a checkbook that can be used to draw down the funds, in part or in whole, at any time. The funds are held in Prudential's general investment account, which allows Prudential to profit from the spread (if any) between its investment returns and the interest paid to the beneficiary, which in Phillips's case was three percent.

In this putative class action, Phillips claims that Prudential's establishment of the Alliance Account as the default payment method and enrollment of her in an Alliance Account breached the insurance policy in violation of Illinois contract law and unreasonably delayed the payment of insurance benefits in violation of section 155 of the Illinois Insurance Code, 215 ILCS 5/155. Phillips also claims that Prudential owed her a fiduciary duty under Illinois law and breached that duty by not disclosing information regarding the investments made with her funds and by keeping for itself the investment profits. The district court dismissed all three claims under Federal Rule of Civil Procedure 12(b)(6), 2011 WL 5915148 (S.D. Ill. Nov. 28, 2011), and Phillips appeals.

We review *de novo* the district court's judgment. See *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true. See *ibid.*; *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). In conducting our review, we must consider not only "the complaint itself," but also "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). We also must consider additional facts set forth in Phillips's district court brief and appellate briefs, so long as those facts "are consistent with the pleadings." *Ibid.* To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence. See *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). The facts set forth below are stated as favorably to Phillips as permitted by the complaint and other materials that may be considered on review of a Rule 12(b)(6) dismissal.

## I. Breach of Contract

As noted above, Phillips claims that Prudential breached the life insurance policy by making the Alliance Account the default method of paying her claim and by enrolling her in an Alliance Account. The parties agree that Illinois law governs interpretation of the policy. We have summarized Illinois law pertaining to the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted). Although ambiguities are construed in the insured's favor, "a court will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); see also *Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006). "[I]n construing a policy, governing legal authority must . . . be taken into account as well, for a policy term may be considered unambiguous where it has acquired an established legal meaning." *Ace Am. Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 766 (7th Cir. 2010) (internal quotation marks omitted).

The Prudential policy authorized the insured (Strang) and the beneficiary (Phillips) to choose among several payment options listed in the policy and any other options that became available in the future:

> [The insured] may choose to have any death benefit paid in a single sum or under one of the optional modes of settlement described below.
>
> If the person who is to receive the proceeds of this contract wishes to take advantage of one of these optional modes, we will be glad to furnish, on request, details of the options we describe below or any others we may have available at the time the proceeds become payable.

The policy listed five payment options as alternatives to a lump-sum payment: (1) Prudential makes installment payments over a fixed period of time of up to twenty-five years; (2) Prudential makes monthly payments over the course of the beneficiary's life, with payments certain for 120 months; (3) Prudential holds the proceeds and pays interest to the beneficiary on an annual, semi-annual, quarterly, or monthly basis; (4) Prudential makes annual, semi-annual, quarterly, or monthly payments for as long as the proceeds allow; and (5) Prudential makes payments like those on any annuity that Prudential regularly issues.

Strang never elected a payment method. When he died, Prudential sent Phillips a Claim Form. The form stated that Prudential's "preferred method of paying death benefits" was the Alliance Account and touted that option as "an easy, no-cost option that gives you great flexibility," one that allows the beneficiary to "access funds immediately to cover current expenses, or in the future after you have had a chance to consider all your financial options." The form explained: "Your

proceeds may remain in this option for as long as you like while you continuously earn interest. To access funds, simply write a draft ('check') for $250 or more to yourself or any third party. There are no monthly service charges, per-check charges or check re-order fees. You will periodically receive a statement showing your current balance, account activity, interest earned, and interest rate." The form added: "This option allows you to access all of your funds immediately or over time. You may leave the money in the account, withdraw the entire amount or write checks against the balance ($250 minimum)."

The Claim Form gave Phillips the opportunity to select a payment method other than the Alliance Account, and clearly stated that if she did not select a payment method, the benefits would be paid by the Alliance Account option:

> Unless you elect an alternative settlement option or select another payment option, eligible death claim benefits will be paid by way of the Alliance Account settlement option. If you would like detailed information about settlement options, please refer to the enclosed Settlement Options brochure, contact our Customer Service Office at (800) 496-1035, or contact your Prudential representative.

> If you would like to select an alternative settlement option, indicate your settlement option below (as described in the Settlement Options brochure). _____

If you would like to select another payment option allowed in the policy, indicate your payment option below.

_____

As can be seen, the form had two lines for Phillips to elect a payment option other than the Alliance Account. The first allowed her "to select an alternative settlement option," and noted that those options were "described in the Settlement Options brochure." The second line allowed her to choose "another payment option allowed in the policy." Phillips left those two lines blank and returned the form. Prudential accordingly enrolled her in the Alliance Account option and sent her a checkbook.

Prudential's establishment of the Alliance Account as the default option, and its enrolling Phillips in an Alliance Account rather than providing her a lump-sum benefit payment, did not breach the insurance policy. The policy allowed Phillips to choose any available payment method—those listed in the Settlement Options brochure, those listed in the policy, or those, like the Alliance Account option, that Prudential "may have available at the time the proceeds become payable"—and by leaving the two lines blank on the Claim Form, Phillips chose to enroll in the Alliance Account option. See *Garcia v. Prudential Life Ins. Co. of Am.*, 2009 WL 5206016, at *8 (D.N.J. Dec. 29, 2009) ("When Plaintiff executed the Claim Form without explicitly designating [how] she wished to receive the benefits she was due under the Policies, she effectively changed the method by

which she would receive those benefits from one sum to an Alliance Account."). Contrary to Phillips's suggestion, the policy did not make lump-sum payment the default payment method, such that Prudential was required to pay Phillips a lump sum unless she told them otherwise; the policy entitled her to "choose" how she would be paid, and she did just that.

The policy did obligate Prudential to "pay the beneficiary the death benefit described in this contract promptly." But the Alliance Account was a valid way of paying the "death benefit described in this contract"; the policy's articulation of that obligation was immediately followed by the proviso that "[w]e make this promise subject to all the provisions of this contract," and the policy explicitly contemplated that the beneficiary would be able to choose payment by the methods described in the policy "or any others we may have available at the time the proceeds become available." Thus, the policy did not guarantee that it would "pay the beneficiary" via a lump sum to the exclusion of any other option, and nor did it rule out the particular option that Phillips chose, the Alliance Account. The policy did guarantee that Phillips would be able to choose to receive a lump sum and that, if she did so, the sum would be paid forthwith. But as discussed above, the Claim Form *did* offer her that option (albeit vaguely), and she chose the Alliance Account instead. As for promptness, there is no suggestion that the payment—that is, the establishment of the Alliance Account and the delivery of the checkbook to Phillips—was not carried out "prompt[ly]"; Phillips nowhere alleges that she had to wait long

to receive the checkbook that gave her access to her funds or that any checks she drafted were not promptly paid. Cf. *Keife v. Metro. Life Ins. Co.*, 2013 WL 1007955, at *7 (D. Nev. Mar. 12, 2013) (holding that the insurer's payment of benefits via a retained asset account is "immediate" within the meaning of the policy at issue in that case).

Phillips complains that Prudential did not make her aware of her entitlement to request a lump-sum payment. It is true that the Claim Form did not explicitly mention the lump-sum option. And we accept at the Rule 12(b)(6) stage that the Settlement Options brochure did not mention it either and that Phillips did not read the policy itself at the time she filled out the Claim Form, leaving her unaware of that choice. But nothing in the policy required Prudential to make explicit reference to the lump-sum option on the Claim Form or in the brochure, or to ensure that Phillips was subjectively aware of that option when she made her selection. The contract merely required Prudential to allow Phillips to choose lump-sum payment, and it did offer that choice by permitting her to select "another payment option allowed in the policy."

The principal appellate decision cited by Phillips to support her contract claim, *Mogel v. UNUM Life Ins. Co.*, 547 F.3d 23 (1st Cir. 2008), is inapposite. *Mogel* was brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The defendant insurer in *Mogel* issued life insurance policies that were "employee welfare benefit plans," *id*. § 1002(1)

& (3), making the insurer an ERISA fiduciary, *id*. § 1002(21)(A). 547 F.3d at 25. When the policies became due, the insurer set up retained asset accounts for the plaintiff beneficiaries and sent them checkbooks that they could use to withdraw funds. *Ibid.* The First Circuit held that so long as the insurer retained possession of life insurance proceeds, it remained subject to suit as an ERISA fiduciary, despite having issued checkbooks to the beneficiaries. *Id*. at 27. *Mogel* certainly stands for the proposition that a retained asset account is not equivalent to a lump-sum payment. *Id*. at 26; but cf. *Rabin v. MONY Life Ins. Co.*, 387 F. App'x 36, 39 & n.1 (2d Cir. 2010) (holding that "because MONY's use of interest-bearing checking accounts permitted Rabin to liquidate his proceeds at any time by writing himself a check for the full account balance, this disbursement method was not sufficiently different from payment by check to permit a jury to find a material breach," and noting that "the life insurance policy in *Mogel* explicitly called for a 'lump sum' payment, whereas the contract here at issue explicitly authorizes MONY to agree to non-lump-sum payments"). But that proposition is irrelevant here, where the question is not whether a retained asset account is the same as a lump-sum payment, but whether Prudential's enrollment of Phillips in the Alliance Account option breached the insurance policy. For the reasons given above, it did not.

Finally, Phillips argues that Prudential breached the policy by failing to explain how the Alliance Account worked. Phillips primarily relies on Illinois Insurance Bulletin 2011-03, *available at* http://insurance.illinois.gov/

cb/2011/CB2011-03.pdf, which states that a beneficiary "can only be deemed to have consented to the retained asset account when there is full disclosure in the notification of the terms of the Retained Asset Account at the time of the claim." But as Phillips's counsel acknowledged at oral argument, that bulletin had an effective date of July 1, 2011, well after the events in this case. And as for the disclosures that Prudential did give, none were false or misleading.

For these reasons, the district court correctly dismissed Phillips's breach of contract claim.

## II. Vexatious and Unreasonable Delay Under 215 ILCS 5/155

Phillips's statutory vexatious and unreasonable delay claim under section 155 of the Illinois Insurance Code fares no better. The statute provides in relevant part: "In any action . . . wherein there is in issue the liability of a company . . . for an unreasonable delay in settling a claim, and it appears to the court that such . . . delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of [three designated] amounts." 215 ILCS 5/155(1). As described by the Supreme Court of Illinois, section 155 provides an "an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996). "If there is a bona fide dispute regarding cover-

age—meaning a dispute that is [r]eal, genuine, and not feigned—statutory sanctions [under section 5/155] are inappropriate." *Medical Protective Co. v. Kim*, 507 F.3d 1076, 1087 (7th Cir. 2007) (citations and internal quotation marks omitted, alteration in original). "Because this statute is penal in nature its provisions must be strictly construed." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (internal quotation marks omitted).

Prudential indisputably did not subject Phillips to an unreasonable or vexatious delay in paying the claim on Strang's life insurance policy. Paying benefits via an Alliance Account checkbook rather than a check is not any kind of a delay, and even if it were, Phillips could hardly complain, as she chose the Alliance Account option. We suppose that Phillips might have had a section 155 claim if Prudential had taken an excessive amount of time to set up her Alliance Account or to send her a checkbook, or if any checks she wrote had taken an unreasonable amount of time to clear. But as noted above, there are no allegations to that effect, and Phillips therefore has no conceivable claim.

### III. Breach of Fiduciary Duty

Phillips's fiduciary duty claim fails as well. In Illinois, "it is well-settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (brackets omitted). Phillips counters that a fiduciary relationship was established when

Prudential became her investment manager for the Alliance Account funds. See *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 823 F.2d 171, 173 (7th Cir. 1987) (brokers owe fiduciary duties to their clients).

The premise of Phillips's argument, that Prudential became her investment manager, is incorrect. Prudential did not invest Phillips's life insurance proceeds for *her* benefit. Regardless of how Prudential's investments performed, Prudential owed Phillips the same amount: the death benefit plus whatever interest called for by the Alliance Account had accrued. This is nothing more than a debtor-creditor relationship, materially indistinguishable from the relationship between a savings bank and a depositor, see *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 105 (2d Cir. 2011) (a retained asset account "constitute[s] a straightforward creditor-debtor relationship"); *Rabin*, 387 F. App'x at 42-43; Restatement (Second) of Trusts § 12 cmt. k ("When the insured or the beneficiary of a life insurance policy exercises an option under which the insurance company makes deferred payments, the company does not become trustee unless it is under a duty to segregate and hold and administer as a separate fund the proceeds of the policy, and does so. Where, as is almost always, if not always, the case, the payments are to be made out of the general assets of the insurance company, it holds nothing in trust and is not a trustee but is a debtor."), which is not a fiduciary relationship, see *Thomas v. UBS AG*, 706 F.3d 846, 853 (7th Cir. 2013) ("a bank is not a fiduciary of its depositors"); *Miller v. Am. Nat'l Bank*

*& Trust Co. of Chi.*, 4 F.3d 518, 520 (7th Cir. 1993)
(same); *Garcia*, 2009 WL 5206016, at *11 (same). And
because there was no fiduciary relationship between
Phillips and Prudential, Phillips has no viable fiduciary
duty claim. See *Greenberger*, 631 F.3d at 401.

\* \* \*

We have considered all of Phillips's arguments, in-
cluding those not expressly referenced above, and find
them without merit. Our disposition of this appeal is
not intended to suggest any endorsement of the
business practice giving rise to this litigation. Prudential
apparently believes that it can earn larger profits
when beneficiaries of its life insurance policies elect the
Alliance Account option over the lump-sum payment
option. And in an apparent effort to "nudge" beneficiaries
into choosing the more profitable (to it) option, Pruden-
tial makes the Alliance Account the default option and
chooses not to reference the lump-sum option on the
Claim Form or in the Settlement Options brochure.
Whether this practice is disreputable is open to debate—
state insurance regulators are entitled to conclude
that the practice should be limited or restricted—but
for present purposes it suffices to say that the practice
did not breach the life insurance policy, did not effect a
vexatious and unreasonable delay under 215 ILCS 5/155,
and did not breach any fiduciary duty. The district
court's judgment accordingly is AFFIRMED.