In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1316

CRESCENT PLAZA HOTEL OWNER, L.P.,

*Plaintiff-Appellant,*

*v.*

ZURICH AMERICAN INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-03463 — **Robert W. Gettleman**, *Judge.*

ARGUED SEPTEMBER 10, 2021 — DECIDED DECEMBER 9, 2021

Before MANION, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The COVID-19 pandemic forced numerous businesses to close their doors or to reduce operations temporarily. Many suffered severe economic losses as a result and have sought money under their business property insurance policies. In this case under our diversity jurisdiction, we address two insurance coverage issues arising out of the partial closure of the Ritz-Carlton hotel in Dallas, Texas. First, we adopt the analysis of today's decision in *Sandy Point*

*Dental, P.C. v. Cincinnati Insurance Co.*, No. 21-1186 (7th Cir. Dec. 9, 2021), and hold that the term "direct physical loss or damage" to property does not apply to a business's loss of use of the property without any physical alteration. Second, we conclude that the microorganism exclusion in the policy here independently bars coverage for the hotel's claimed losses.

I.   *Facts and Procedural History*

   A.   *The COVID-19 Pandemic and Closure Orders*

As the COVID-19 pandemic was spreading in the United States in March 2020, the Dallas County government issued several orders restricting the operations of local businesses. On March 21, the county prohibited in-person dining and ordered the closure of gyms, fitness centers, and spas, among other businesses. Three days later, another order closed all nonessential businesses and instructed residents to shelter in place. Hotels were permitted to continue to provide lodging, as well as delivery and take-out food services, subject to compliance with social-distancing rules.

Plaintiff Crescent Plaza Hotel Owner, L.P. owns the Ritz-Carlton in Dallas. The hotel offers guest rooms and suites, a restaurant and bar, general event space, and other amenities, including a salon, spa, and fitness center. Crescent alleges that COVID-19 rendered the air in the hotel unsafe and diminished the functional space available on the premises, causing significant losses of business income. Crescent also alleges that it was required to incur expenses to install plexiglass partitions and hand sanitizer stations, to display signs throughout the hotel, and to move furniture to permit social distancing.

B.  *The Insurance Policy*

Defendant Zurich American Insurance Company issued a general business property insurance policy to Marriott International—the operator of the hotel—for the period of April 1, 2019 to April 1, 2020. Crescent is an additional insured under the terms of the policy. It argues that its losses are covered under several different provisions, nearly all of which require "direct physical loss or damage" to covered property. Zurich also issued another one-year policy to Marriott—again including Crescent as an additional insured—that took effect on April 1, 2020. That policy was largely identical to the 2019 version, but it added an exclusion for losses attributable to any communicable disease, including viruses. Crescent has not offered on appeal any reason to doubt that this exclusion bars coverage under the 2020 policy. And both policies include a microorganism exclusion, which bars coverage for losses "directly or indirectly arising out of or relating to: mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health."

C.  *District Court Proceedings*

Crescent filed a claim with Zurich, which denied the claim in large part as beyond the scope of the 2019 and 2020 policies' coverage. Crescent then filed a complaint in the Northern District of Illinois seeking damages for breach of contract and a declaratory judgment that its losses were covered under the policies. Zurich moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court held that the phrase "direct physical loss or damage" requires either "a permanent [dispossession] of the property

due to a *physical* change … or *physical* injury to the property requiring repair." *Crescent Plaza Hotel Owner, L.P. v. Zurich American Insurance Co.*, 520 F. Supp. 3d 1066, 1070 (N.D. Ill. 2021). Since Crescent could not allege either, the court granted the motion to dismiss. We affirm the dismissal.

II. *Discussion*

A. *Legal Standard*

We review de novo, meaning without deference, a district court's grant of a motion to dismiss for failure to state a claim. *Ochoa v. State Farm Life Insurance Co.*, 910 F.3d 992, 994 (7th Cir. 2018). We accept the allegations in the complaint as true, and we draw all reasonable inferences in favor of the plaintiff. *Bilek v. Federal Insurance Co.*, 8 F.4th 581, 584 (7th Cir. 2021). Yet the complaint must still include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires that the plaintiff show "more than a sheer possibility" of liability, but it "is not akin to a 'probability requirement.'" *Id.*, quoting *Twombly*, 550 U.S. at 556.

Crescent's claims arise under state law, and the parties agree that Illinois law applies. In Illinois, "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Windridge of Naperville Condominium Ass'n v. Philadelphia Indemnity Insurance Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019), quoting *Hobbs v. Hartford Insurance Co. of*

*the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). The court's function is "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018). If the policy is unambiguous, its terms must be applied as written. *Id.* Ambiguity exists if the language of the policy is subject to more than one reasonable interpretation, as applied to the dispute before the court. *Founders Insurance Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010). But disagreement between the parties as to meaning does not itself make the policy ambiguous, and the court "will not strain to find an ambiguity where none exists." *Id.* Our inquiry here focuses on whether the terms are ambiguous as applied to the allegations before us. *Windridge*, 932 F.3d at 1039–40.

B. *Coverage*

The first issue presented is whether Crescent has alleged direct physical loss or damage to its property. For the reasons explained in today's decision in *Sandy Point Dental*, No. 21-1186, slip op. at 7–14, we conclude that it has not.[1]

---

[1] The parties agree that Crescent is entitled to recover for its losses under the 2019 policy's coverage for cancellation of bookings. That provision covered losses resulting from "the cancellation of, and/or inability to accept bookings or reservations for accommodation," and it applied if those losses were "a direct result of … [the] outbreak of contagious and/or infectious disease as well as restrictive guidance or travel advisories placed on a region or area by Centers for Disease Control, World Health Organization, or comparable authority." Zurich conceded in the district court that it would pay for those losses up to the policy's applicable $5,000,000 limit. We take Zurich at its word, and we assume the district court could use its authority under Rule 60(b) if problems arise.

C. *Exclusions*

The microorganism exclusion in Crescent's policy provides a second, independent basis for denying coverage. Although the district court did not address the exclusion, we may affirm on any basis supported by the record, so long as the opposing party had an opportunity to be heard on the issue. *In re Airadigm Communications, Inc.*, 616 F.3d 642, 652 (7th Cir. 2010). Here, Zurich raised the issue in its motion to dismiss and Crescent responded, and the parties' appellate briefs address the issue fully.

1. *Role of Exclusions*

In an insurance case, the burden is initially on the insured party to show that its losses are covered. *Addison Insurance Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009). Once that showing has been made, the burden shifts to the insurer to establish that an exclusion applies. *Id.* Exclusions are read narrowly and apply only if their application is "clear and free from doubt." *Scottsdale Insurance Co. v. Columbia Insurance Group, Inc.*, 972 F.3d 915, 919 (7th Cir. 2020), quoting *National Fire Insurance of Hartford v. Walsh Construction Co.*, 909 N.E.2d 285, 288 (Ill. App. 2009).

2. *The Microorganism Exclusion*

The microorganism exclusion appears in both the 2019 and 2020 policies that Zurich issued for Crescent's hotel. The exclusion bars coverage for losses "directly or indirectly arising out of or relating to: mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health." Crescent does not dispute that its alleged losses arose from and were

related to the coronavirus. The question is whether the virus qualifies as a "microorganism" under the terms of the exclusion. We hold that it does.

### a.  *Dictionary Definitions*

Since the term "microorganism" is not defined in the policy, we construe it as an ordinary reader or policyholder would. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 830 N.E.2d 575, 582 (Ill. 2005). Dictionaries can provide useful guides to ordinary meanings of terms, and many dictionaries include viruses within their definitions of "microorganism." E.g., *Microorganism*, New Oxford American Dictionary (3d ed. 2010) ("a microscopic organism, especially a bacterium, virus, or fungus"); *Microorganism*, Webster's New World College Dictionary (5th ed. 2020) ("any microscopic or ultramicroscopic animal, plant, bacterium, virus, etc."); see also *Microorganism*, Webster's Third New International Dictionary (unabr. ed. 1993) (including "virus" as a synonym of "microorganism"); *Microbiology*, Britannica, https://www.britannica.com/science/microbiology (last visited Dec. 9, 2021) (listing viruses as one of "[t]he major groups of microorganisms").

It is true, as Crescent points out, that other dictionary definitions of "microorganism" do not mention viruses. E.g., *Microorganism*, Merriam-Webster Online, https://www.merriamwebster.com/dictionary/microorganism (last visited Dec. 9, 2021) ("an organism (such as a bacterium or protozoan) of microscopic or ultramicroscopic size"); see also *"Virus" vs. "Bacteria": What's the Difference?*, Dictionary.com, https://www.dictionary.com/e/virus-vs-bacteria (last visited Dec. 9, 2021) ("Because viruses aren't technically alive, they also aren't technically microorganisms."). We also assume for

purposes of this appeal that, as Crescent argues, there is "considerable disagreement" among biologists as to whether viruses are appropriately categorized as microorganisms for various scientific purposes.

But identifying competing dictionary definitions and debate among experts is not necessarily enough to render the exclusion ambiguous. See, e.g., *Cincinnati Insurance Co. v. Flanders Electric Motor Service, Inc.*, 40 F.3d 146, 152 (7th Cir. 1994) ("The existence of multiple dictionary definitions does not compel the conclusion that a term is ambiguous."). Nor is Crescent's assertion that viruses—unlike mold, fungi, and the other categories specifically listed in the exclusion—are not alive and do not have cells. The question is how an ordinary reader or policyholder, not a scientist, would understand the term as used in the policy. Courts are not to adopt "an interpretation which rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand." *Founders*, 930 N.E.2d at 1004, quoting *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 104 N.E.2d 250, 255 (Ill. 1952). An ordinary reader, unversed in the nuances of classification debates in microbiology, would be unlikely to home in on viruses' lack of cellular structure to decide whether losses they cause fall under the exclusion. We also expect that the average policyholder would be puzzled by Crescent's theory that the exclusion bars losses caused by bacteria but not those caused by viruses. We have trouble imagining why parties might draw that line on the scope of the exclusion.

b. *Context*

The context in which the term "microorganism" is used in this policy confirms that the exclusion unambiguously

applies to viruses. In many cases, "the linguistic and the functional contexts of words offer better clues to meaning than do dictionaries." *Public Hospital of Town of Salem v. Shalala*, 83 F.3d 175, 177 (7th Cir. 1996). It may be possible to use the term "microorganism" in a narrower sense that does not include viruses, as some of Crescent's cited dictionaries do, but that is not how the term is used in context in this policy.

Instead, the context and language signal clearly that the exclusion applies to losses caused by viruses. The relevant language is deliberately broad, covering microorganisms "of any type, nature, or description," and applying broadly to "any substance whose presence poses an actual or potential threat to human health," which the coronavirus undeniably does. Rather than attempting to list every conceivable example of a microorganism, Zurich used broad language that a reasonable reader would understand to include viruses. The breadth of that language does not render the exclusion ambiguous. See *Platinum Supplemental Insurance, Inc. v. Guarantee Trust Life Insurance Co.*, 989 F.3d 556, 571–72 (7th Cir. 2021) (observing that language in a contract is not ambiguous simply because it is broad).

### c. *The Surplusage Argument*

Crescent also supports its argument by relying on a separate policy provision—the biological or chemical materials exclusion. If the microorganism exclusion applied to losses caused by viruses, Crescent argues, there would have been no need to include the biological or chemical materials exclusion in the policy. This argument is not persuasive. The biological or chemical materials exclusion bars coverage for losses connected to "the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials."

Crescent asserts that this language "contemplates viruses" and thus would be rendered superfluous if the microorganism exclusion were also read to include viruses. Not at all. The category of "pathogenic or poisonous biological or chemical materials" encompasses substances—cyanide or sarin gas, for example—that plainly would not be understood as microorganisms. That exclusion, therefore, would still be doing work of its own regardless of whether viruses qualify as microorganisms. That exclusion is also limited to "malicious" uses of such materials, rendering it inapplicable to this global pandemic.[2]

More fundamental, Crescent's surplusage argument overlooks the fact that insurance policies often use overlapping provisions to provide greater certainty on the scope of coverages and exclusions. See *Great West Casualty Co. v. Robbins*, 833 F.3d 711, 718 (7th Cir. 2016); see also *Citizens Insurance Co. v. Risen Foods, LLC*, 880 F.3d 73, 79 (2d Cir. 2018) ("It is not surprising that a document, especially one drafted by an insurance company, would use a 'belt and suspenders' approach…."); *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 68 (1st Cir. 2012) ("insurance policies are notorious for their simultaneous use of both belts and suspenders, and some overlap is to be expected"); *TMW Enterprises, Inc. v. Federal Insurance Co.*, 619 F.3d 574, 577 (6th Cir. 2010) (noting that "redundancies abound" in insurance

---

[2] We see some tension in Crescent's view that the phrase "pathogenic or poisonous biological or chemical materials" is broad enough to encompass viruses, while "microorganism of any type, nature, or description" is not. As Crescent acknowledges in the context of the biological or chemical materials exclusion, a policy exclusion might use broad language that encompasses viruses without specifically mentioning them.

contracts and that the belt-and-suspenders approach to drafting is common). That practice makes good sense for both coverage language and exclusion language. Once the insured party has made an initial showing of coverage, the insurer bears the burden of establishing that an exclusion applies. A prudent insurer will try to remove any doubt that certain categories of losses are excluded, which may lead to overlap between different provisions. "Some redundancy in insurance contracts is normal, while construing an endorsement to be completely superfluous is not." *Great West*, 833 F.3d at 717–18 (internal citation omitted). Some overlap between these two exclusions in the Zurich policies does not render either superfluous.

Finally, Crescent argues that Zurich's addition of the communicable-disease exclusion to the 2020 policy amounted to a tacit admission that the 2019 policy did not exclude losses caused by viruses. We reject this argument for similar reasons. As the pandemic spread and disputes were arising on the scope of insurance coverage, it was sensible for Zurich to make even clearer to policyholders that losses arising from COVID-19 would not be covered. We have recognized that revising language in an insurance policy does not constitute an admission that an alternative interpretation of the original language was correct. See *Pastor v. State Farm Mutual Automobile Insurance Co.*, 487 F.3d 1042, 1045 (7th Cir. 2007) ("to use at a trial a revision in a contract to argue the meaning of the original version would violate Rule 407 of the Federal Rules of Evidence, the subsequent-repairs rule"). More fundamental, though, such belt-and-suspenders modifications to policy language simply do not compel the inference that prior policy language did not require the same result.

The judgment of the district court is AFFIRMED.