In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-1304

ANDREEA GOCIMAN, *et al.*,

*Plaintiffs-Appellants*,

*v.*

LOYOLA UNIVERSITY OF CHICAGO,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-03116 — **Robert W. Gettleman**, *Judge*.

———————————

ARGUED DECEMBER 7, 2021 — DECIDED JULY 25, 2022

———————————

Before ROVNER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Simon Pfeifer, Isabel Botello, and Kari Whalen are undergraduate students who paid tuition and fees to attend Loyola University of Chicago's on-campus program during the Spring 2020 semester. After Loyola suspended all in-person instruction, curtailed access to campus facilities, and moved all instruction online in response to the COVID-19 pandemic, the students brought a

putative class action suit against Loyola for breach of contract and unjust enrichment. The students alleged that they do not challenge Loyola's wisdom in shutting down its campus, but the decision deprived them of in-person instruction and access to on-campus facilities that Loyola promised them in exchange for tuition and fees. The students sought a refund of tuition and fees for the portion of the semester that took place remotely. The district court granted Loyola's motion to dismiss for failure to state a claim, and the students appealed.

At the outset, we note that the present case is one of many around the country. During the height of the COVID-19 pandemic, several colleges and universities closed their campuses and transitioned to remote education. Many institutions declined to issue refunds after doing so. This prompted some students and parents to turn to the courts for help. Given the challenges presented by the novel pandemic, universities may have contractual defenses. But those defenses are not before this court today. Nor is the issue of damages.

In the present appeal, our task is a narrow one: we look at the students' complaint and ask whether the students pled enough to withstand dismissal for failure to state a claim. Because we conclude that the students' complaint states a claim for breach of an implied contract under Illinois law, and because the plaintiffs are entitled leave to amend to save their alternative claim for unjust enrichment, we vacate in part and remand for further proceedings.[1]

---

[1] The suit initially involved parent-plaintiffs Andreea Gociman and Joseph Hickey, both of whom the district court dismissed from the suit for lack of standing. The parents appealed the judgment yet do not challenge

## I. Background

On an appeal from a ruling on a motion to dismiss, we accept all well-pled facts alleged in the complaint as true and draw all reasonable inferences in the students' favor. *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (citation omitted). We also consider any documents attached and integral to the complaint as part of the students' allegations. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

Loyola University is a private, not-for-profit university in Chicago that offers students the option to enroll in a traditional on-campus educational experience or an online program. Most of Loyola's programs are offered on-campus. Students enrolled in the traditional on-campus program have access to 80 undergraduate majors and over 140 graduate, professional, and graduate-level certificate programs across 11 colleges and schools. Ordinarily, the on-campus program takes place in-person; students have in-person instruction and access to campus facilities, events, and resources.

Loyola's catalog provides its course listings for the academic year. Relevant here, the 2019–2020 catalog indicates that several lectures, labs, or discussions will take place "[i]n person." It also specifies room requirements for each course, with many courses taking place at on-campus sites. For example, some course descriptions represent that a class will be

---

their dismissal. We therefore affirm in part the district court's ruling as to the parents.

held in the "General Classroom," "Seminar," or "Lab" located on campus.

To enroll in courses, students use an online registration portal. On the registration portal, students choose classes by subject matter, instructor, meeting time and day, campus, location, and mode of instruction. The registration portal indicates whether a course has a service-learning or other in-person requirement. After choosing classes, students must sign a disclaimer indicating that they accept financial responsibility to pay for the courses in which they enrolled.

During the Spring 2020 semester, full-time students who registered for classes in Loyola's on-campus program paid $22,065 in tuition per semester, or between $1,050–$1,838 per credit hour. Students also paid mandatory fees such as a "Student Development Fee" of $419 per semester in exchange for access to multiple on-campus programs, services, and events; a "Technology Fee" of $125 per semester which funds computer labs, software, and technology support; and a "CTA U-Pass Fee" of $155 per semester which affords students unlimited riding on Chicago buses and trains. Students also paid a variety of other mandatory fees.

By contrast, students enrolled in Loyola's online program paid $693 per credit hour for tuition, and students registered for seven or more hours paid $92 for the Student Development Fee and $78 for the Technology Fee. Online students were not required to pay a CTA U-Pass Fee.

Loyola offers only a fraction of its overall academic offerings online. The online program includes seven adult degree completion programs, 21 graduate programs, and 18 certificate programs. According to its website, "[a]n online course

at Loyola University Chicago is one that requires no face-to-face meetings on campus; all course activities [are] conducted via the internet."

Loyola's Spring 2020 semester began on January 13, 2020. As usual, students enrolled in the on-campus program received in-person instruction and access to on-campus facilities. However, midway through the semester, on March 9, 2020, Illinois Governor J.B. Pritzker issued a disaster proclamation concerning the rising number of COVID-19 cases in Illinois. Two days later, the World Health Organization declared COVID-19 a global pandemic. In response, Loyola closed its residence halls and campus buildings, canceled on-campus student events, and announced that all "in-person, face-to-face classes" were suspended. By the end of March, Loyola completely closed its physical campuses and in-person resources to students and transitioned to remote instruction. Loyola issued a $183 credit to full-time students who paid the Student Development Fee and canceled this fee for the Fall 2020 semester when remote instruction continued. Loyola also provided a partial refund for room and board. But Loyola did not refund tuition or other mandatory fees such as the Technology Fee.

A putative class action followed. Simon Pfeifer, Isabel Botello, and Kari Whalen are students who paid tuition for Loyola's on-campus program during the Spring 2020 semester. They brought suit on behalf of themselves and others similarly situated against Loyola for breach of contract, or in the alternative, unjust enrichment. In their amended class action

complaint,[2] the students allege that Loyola's transition to remote instruction breached the university's contractual obligation to provide in-person instruction and on-campus services they were promised in exchange for paying tuition and fees. They contend that this contractual promise is set out in Loyola's course catalog, registration portal, and other publications. They also contend that Loyola's online program, which is "worth less" than Loyola's on-campus program, and Loyola's pre-pandemic practice of providing in-person face-to-face instruction and on-campus services, also evince this contractual promise. The students make clear that they do not question Loyola's professional judgment in dealing with COVID-19, but they do not believe they should "bear the entirety of the costs of the pandemic." Noting that they were "dissatisfied with the education and services that they received—or, rather, did not receive," the students sought damages representing the difference in value between in-person classes and access to facilities, and the online education they received.

Loyola moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. The district court granted the motion. The district court held that the students' claim for breach of contract failed for two reasons: one, it was barred by the educational malpractice doctrine, and two, the students failed to allege a specific contractual promise for in-person instruction. The district court found that none of the materials the students cited established a contractual obligation to provide an in-person educational experience, and it declined to infer this promise based on the difference in tuition

---

[2] All references to the complaint are to the students' amended class action complaint.

and fees between Loyola's on-campus and online programs. The district court also dismissed the students' unjust enrichment claim because the students incorporated by reference the existence of a contract between the parties. Additionally, the district court reasoned that even if the students had not incorporated the contract allegations, the students' unjust enrichment claim failed because the breach of contract claim failed. Concluding that further amendment would be futile, the district court denied the students leave to amend, and dismissed the case with prejudice. The students timely appealed.

Since then, several district courts within this circuit have dismissed similar lawsuits brought by students at other Illinois universities. *See, e.g.*, *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058 (N.D. Ill. 2021); *Miller v. Lewis Univ.*, 533 F. Supp. 3d 678 (N.D. Ill. 2021); *Polley v. Northwestern Univ.*, No. 20 C 4798, 2021 WL 4192076 (N.D. Ill. Sept. 15, 2021); *Delisle v. McKendree Univ.*, No. 20-CV-1073, 2021 WL 4402474 (S.D. Ill. Sept. 27, 2021), *appeal docketed*, No. 21-2988 (7th Cir. Oct. 27, 2021); *Buschauer v. Columbia Coll. Chi.*, No. 20 C 3394, 2022 WL 103695 (N.D. Ill. Jan. 10, 2022), *appeal docketed*, No. 22-1228 (7th Cir. Feb. 11, 2022); *Hernandez v. Ill. Inst. of Tech.*, No. 20-cv-3010, 2022 WL 952524 (N.D. Ill. Mar. 30, 2022), *appeal docketed*, No. 22-1741 (7th Cir. Apr. 29, 2022).[3]

---

[3] We also note that after oral argument in this matter, our court decided *Thiele v. Bd. of Trs. of Ill. State Univ.*, 35 F.4th 1064 (7th Cir. 2022). In that case, two students alleged that they paid a state university a mandatory fee for on-campus access, which they did not receive when the campus closed during the pandemic. The students brought a suit under 42 U.S.C. § 1983 alleging that the university's failure to refund the fee violated the Fifth Amendment's Takings Clause and the Fourteenth Amendment's Due Process Clause. The students also raised state law breach of contract, unjust enrichment, and conversion claims. The district court dismissed the

On the other hand, several district courts, including one in this circuit, have allowed similar suits to proceed. *See, e.g., Ninivaggi v. Univ. of Del.*, 555 F. Supp. 3d 44, 51–52 (D. Del. 2021) (Bibas, J., sitting by designation) (denying motion to dismiss on breach of contract and unjust enrichment claims but granting on conversion claims); *Fiore v. Univ. of Tampa*, No. 20-CV-3744, 2021 WL 4925562, at *13, *18–20 (S.D.N.Y. Oct. 20, 2021) (collecting cases); *Doe v. Univ.*, No. 20-1264, 2020 WL 7634159, at *2–3 (C.D. Ill. Dec. 22, 2020) (collecting cases).

Recently, the D.C. Circuit issued a ruling on a motion to dismiss in a similar action filed by students seeking refunds from two District of Columbia universities that transitioned to online learning during the COVID-19 pandemic. *Shaffer v. George Washington Univ.*, 27 F.4th 754 (D.C. Cir. 2022). Applying District of Columbia law, the D.C. Circuit reversed, in part, the district court's dismissal and held that the students sufficiently pled breach of contract, and in the alternative, unjust enrichment against the universities as to tuition and some, but not all, fees. *Id.* at 766–69.[4]

---

constitutional claims, leaving the court without federal question jurisdiction. In the absence of diverse parties, the district court declined to exercise supplemental jurisdiction over the students' state law claims. We affirmed, noting that the question of whether the students have a contract claim is for the Illinois Court of Claims, which has exclusive jurisdiction over contract suits against public bodies. *See id.* at 1067 (citing 705 ILCS 505/8(b)). Such jurisdictional issues are not present in the instant case. Diversity jurisdiction exists in this case because at least one member of the putative class is a citizen of a different state than Loyola, the proposed class exceeds 100 members, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d).

[4] We also note the recent Sixth Circuit decision in *Dean v. Chamberlain University, LCC*, No. 21-3821, 2022 WL 2168812 (6th Cir. June 16, 2022)

Against this backdrop, we now consider the students' breach of contract and unjust enrichment claims.

## II.    Legal Standard

We review the grant of a motion to dismiss for failure to state a claim de novo. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1005 (7th Cir. 2021) (citation omitted). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of the complaint, we consider documents integral to the complaint that might aid in determining whether a plaintiff is entitled to relief. *Phillips*, 714 F.3d at 1020 (citation omitted). The bar to survive a motion to dismiss is not high. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge [that] 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

---

upholding the dismissal of a student's breach of contract and unjust enrichment claims. Unlike the case before us, *Dean* involved an express contract with a disclaimer that rebutted any inference that the university promised in-person education under all circumstances. *See id.* at *3 (distinguishing *Dean* from cases in which no express contract existed and courts "defined the terms of a student and university's contract by visiting the college or university's catalog, handbook, and/or other guidelines supplied to the students"). As discussed below, this case does not involve an express contract and the existence of a disclaimer is disputed.

At the motion to dismiss stage, we accept all well-pled facts alleged in the complaint as true and draw all reasonable inferences in plaintiffs' favor. *Crescent Plaza*, 20 F.4th at 307 (citation omitted). "Dismissal is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 521 (7th Cir. 2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### III.    Discussion

### A.    Educational Malpractice

We first consider whether, as Loyola contends and the district court concluded, the students' contract and unjust enrichment claims are, at their core, claims for educational malpractice. In Illinois, educational malpractice claims are not cognizable. *Waugh v. Morgan Stanley & Co.*, 2012 IL App (1st) 102653, ¶ 47 (citation omitted). A plaintiff raises an educational malpractice claim if a plaintiff asks a court to evaluate the course of instruction or the soundness of a method of teaching that has been adopted by an educational institution. *Id.* ¶ 38. Stated succinctly, "if a claim requires an analysis of the quality of education," it is an educational malpractice claim. *Id.* ¶ 28 (citations omitted). Given the many policy concerns that counsel against allowing educational malpractice claims, *see Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992), courts will not second-guess the professional judgment of a university in academic matters, regardless of how a claim is packaged. *Id.* at 416.

Thus, to maintain a breach of contract claim against a university, a plaintiff must do more than simply allege that the education was not good enough. *Id.* at 416–17. Rather, a

plaintiff must "point to an identifiable contractual promise that the defendant failed to honor." *Id.* at 417. We have suggested that if a university took tuition money and then provided no education at all, or "promised a set number of hours of instruction and then failed to deliver," a breach of contract action may exist. *Id.* (citation omitted). In those instances, a ruling would not require inquiry into the quality of the education, but "an objective assessment of whether the institution made a good faith effort to perform its promise." *Id.*

We conclude that the students' claims are not educational malpractice claims. While the students pled that they were "dissatisfied" with the educational services they received during the pandemic and that the online program was "worth less" than an in-person educational experience, we do not read this as an attack on the quality of the remote education the students received. Instead, these allegations speak to the existence of a purported implied contract and the nature of the students' damages from the university's alleged breach of contract. Here, the students do more than allege that the remote education was not good enough. Rather, the students point to an identifiable contractual promise that the university failed to honor—the promise to provide in-person classes and access to on-campus facilities and resources.

Loyola contends that evaluating the students' claims requires an analysis of the nature and quality of the education experience the students expected and the "substitute" education the students received. Loyola also contends that evaluating the students' claims requires an analysis of the reasonableness of the university's decision to transition to remote learning during the pandemic. We disagree. Deciding whether the university contractually promised to provide

students an in-person educational experience, and whether the university breached that promise, does not require a court to evaluate the reasonableness of the university's conduct in providing remote educational services during the pandemic, or second-guess the professional judgment of the university. Neither does it require a court to decide whether the students received the same level of instruction through online classes, nor analyze the nature and quality of the educational experience the students received. Fundamentally, the students raise a classic breach of contract claim—that is, whether the university promised, but failed to deliver, an in-person educational experience. Because the students do not challenge the quality of the remote education, their claims are not barred by the educational malpractice doctrine.

## B.     Breach of Contract

We next consider whether the students sufficiently pled breach of contract. To establish a breach of contract in Illinois, a plaintiff must prove: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 2016 IL App (1st) 152662, ¶ 27. A contract can be either express or implied-in-fact. *See BMO Harris Bank, N.A. v. Porter*, 2018 IL App (1st) 171308, ¶ 51–52; *Marcatante v. City of Chicago, Ill.*, 657 F.3d 433, 440 (7th Cir. 2011) (citation omitted). An implied-in-fact contract must contain all the elements of an express contract, but unlike an express contract or other contracts, its terms are inferred from the conduct of the parties. *Marcatante*, 657 F.3d at 440 (citation omitted). An implied-in-fact contract "is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the

expressions [on] the part of the promisor which show an intention to be bound." *Id.* (quoting *Estate of Jesmer v. Rohlev*, 609 N.E.2d 816, 820 (Ill. App. Ct. 1993)); *see also Matthews v. Chicago Transit Auth.*, 2016 IL 117638, ¶ 93 (citations omitted).

In the educational context, courts recognize that a contractual relationship exists between a college or university and its students. *See, e.g., DiPerna v. Chicago Sch. of Pro. Psychology*, 893 F.3d 1001, 1006 (7th Cir. 2018) (quoting *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. App. Ct. 2004)); *Ross*, 957 F.2d at 416 (collecting cases). Because "a formal university-student contract is rarely employed … 'the general nature and terms of the agreement are usually implied.'" *Ross*, 957 F.2d at 417 (citation omitted). As such, the school's catalogs, bulletins, circulars, regulations, and other publications, and customs become part of the contract. *Id.* at 416; *see also Raethz*, 805 N.E.2d at 699; *Gray v. Mundelein Coll.*, 695 N.E.2d 1379, 1386 (Ill. App. Ct. 1998).[5]

---

[5] The dissent posits that Illinois courts divide implied contracts in the university-student context into what the dissent calls "specific promise" and "fundamental promise" contracts. According to the dissent, only "fundamental promise" contracts may be implied by the parties' conduct or actions. But none of the cases the dissent cites treat the supposed distinction between "specific" and "fundamental" promises as a doctrinal point that inherently limits a student's ability to allege past conduct or practice when seeking to enforce an identifiable contractual promise. *See, e.g., Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019) (no mention of this supposed distinction or pleading restraint); *Bosch v. NorthShore Univ. Health Sys.*, 2019 IL App (1st) 190070, ¶¶ 36–41 (same); *Brody v. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 698 N.E.2d 257, 265–66 (1998) (same); *Miller v. MacMurray Coll.*, 2011 IL App (4th) 100988-U, ¶ 45 (Ill. App. Ct. Oct. 5, 2011) (unpublished) (same). Illinois courts have not limited school

To plausibly state a breach of contract claim, it is not enough for a student to merely state that an implied contract existed and was breached. As stated previously, a student must point to an identifiable contractual promise that the defendant failed to honor. *Ross*, 957 F.2d at 417; *see Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). That is, "the student's complaint must be specific about the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013) (citation omitted).

Here, the students allege that, in exchange for tuition and fees, Loyola promised in-person instruction and access to on-campus facilities and services. The students point to Loyola's catalogs, registration portal, pre-pandemic practice, and different charges for Loyola's online versus on-campus programs as sources for the contract, whether express or implied. Contrary to the students' position, these sources do not constitute an express contract for Loyola to provide in-person educational services. But we agree with the students that, taken as a whole, these sources are sufficient to show an implied contract to provide in-person instruction and access to Loyola's campus in exchange for tuition and certain mandatory fees.

### 1.     Tuition

At the motion to dismiss stage, the students allege sufficient facts to plausibly state a claim that Loyola breached an implied contract to provide the students in-person instruction

---

contract cases in the way the dissent characterizes, and we are not in a position to rewrite Illinois law.

in exchange for tuition. To begin, Loyola's 2019–2020 catalog indicates that many courses will take place in-person and identifies specific rooms located on campus.

Loyola argues that the catalog is not a contract because it warns that it is "published for informational purposes" and contains an express reservation of rights. This disclaimer provides that Loyola reserves the right to "change, at any time, without notice … curriculum, course structure and content … notwithstanding any information set forth in the catalog." But the parties dispute whether this reservation of rights was included in the 2019–2020 catalog. Such a factual dispute is better resolved in the district court, after the motion-to-dismiss stage. At that juncture, the district court can also consider whether the reservation of rights, which does not expressly refer to emergencies or other force majeure events, reasonably applies to the pandemic. *See Shaffer*, 27 F.4th at 764–65 (noting that a similar reservation of rights cannot be viewed by a reasonable person as allocating the entire financial consequences of the pandemic change to online classes to the students); *but see Dean v. Chamberlain Univ.*, LLC, No. 21-3821, 2022 WL 2168812, at *2–3 (6th Cir. June 16, 2022) (concluding that university did not promise in-person teaching and clinical experience under all circumstances because reservation specifically addressed "natural occurrences or other circumstances beyond [the school's] control"). At this stage of the case however, the possibility of a generic disclaimer does not overcome a reasonable inference that the course catalog implies in-person instruction.

Loyola's online registration portal likewise supports a reasonable inference of in-person instruction. When students register for on-campus classes through the online registration

portal, they are provided with details about the course's campus location and whether a course has an in-person requirement.[6]

In addition to Loyola's course catalog and registration portal, Loyola's pre-pandemic practice supports a reasonable inference that in-person instruction, along with access to on-campus facilities, is a norm for students enrolled in the traditional on-campus program. Prior to March 2020, Loyola provided students in-person instruction and access to on-campus facilities. Students received in-person instruction until the pandemic interrupted this norm.[7]

---

[6] The dissent writes that "in the context of class registration, it would be odd to treat every aspect of a class description as an enforceable contractual promise" and notes that individual courses may be canceled or moved to a different classroom based on under-enrollment or an incapacitated professor. To be clear, we are not saying that every sentence in the catalog or registration portal creates an independent promise. Only that the frequent references to in-person instruction found in both the catalog and registration portal are enough for the court to make the reasonable inference—at the pleading stage—that students were promised in-person instruction. The dissent notes that the registration period may be "unpredictable," but whether this allows a university to change all courses from in-person to remote instruction is an issue better sorted out at the merits stage. *See Bosch*, 2019 IL App (1st) 190070, ¶ 45 (citations omitted) (noting that "most of the case law in Illinois that upheld academic decisions c[o]me[s] after some measure of discovery and evidence, rendered at trial or at least summary judgment").

[7] The dissent raises a "minor point" that facts regarding Loyola's pre-pandemic practice are absent from the complaint and attached documents. Post 8 at n. 5. But the students specifically allege that they received on-campus services *before* March 2020. *See* R.17 at ¶ 22 ("Like many traditionally residential colleges and universities across the United States, for the 2019-2020 school year, Loyola offered the vast majority of its programs on-campus…); *see also id. at* ¶¶33–37. Based on the allegations in the

Finally, students enrolled in the traditional on-campus program paid higher tuition and fees than students enrolled in Loyola's online program. A reasonable inference is that the higher tuition and fees are based, at least in part, on access to in-person instruction and on-campus facilities and resources.

Loyola argues that any inference based on the disparate tuition and fees is "baseless" given the distinct nature of each program. But this argument misses the point. Whether the higher tuition and fees for the on-campus program, in conjunction with all the facts and circumstances, creates an implied contract is a merits question to be decided first by the district court. At the motion to dismiss stage for failure to state a claim, we test the sufficiency of the complaint, not the merits of the case. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). This requires the court to accept the facts as true and draw all reasonable inferences in the students' favor. Applying this standard, the students plausibly allege an implied promise by Loyola to provide in-person instruction that the students paid tuition for but failed to receive.

### 2.     Fees

Applying the motion to dismiss standard, the students also plausibly allege that Loyola breached its obligation to provide them access to campus in exchange for the students' payment of fees. The students allege that they were required to pay certain fees to access on-campus facilities. Specifically, the students point to the Student Development Fee, Technology Fee, and CTA U-Pass Fee.

---

complaint, we can reasonably infer that Loyola provided on-campus services prior to the Spring 2020 semester. *See Crescent Plaza*, 20 F.4th at 307.

The students paid $419 per semester for a Student Development Fee, which allows students to access multiple programs and services including the Wellness Center, athletic center, shuttle bus, and student events. Based on these allegations, we reasonably infer that the students paid this fee in part to access on-campus facilities. This inference is further supported by the students' allegation that Loyola issued a $183 credit to full-time students who paid the Student Development Fee for the Spring 2020 semester, and later canceled the fee for the Fall 2020 semester when remote education continued. The students have therefore sufficiently pled breach of contract as to the Student Development Fee.

In addition to the Student Development Fee, the students paid $125 per semester for the Technology Fee, which funds computer labs, software, and technology support. Loyola argues that the students failed to state a claim as to this fee because the students received technology support even as the school transitioned to remote learning. Again, this argument speaks to the merits and not the sufficiency of the complaint. To the extent the students paid the Technology Fee to access on-campus facilities such as computer labs, which is a reasonable inference, the students pled enough to survive a motion to dismiss as to the Technology Fee.

The students also paid a CTA U-Pass Fee in exchange for unlimited rides aboard Chicago buses and trains. The students do not allege, however, that they paid this fee to access on-campus facilities. They also do not allege that the university prevented them from continuing to receive unlimited rides on Chicago buses and trains. In the absence of such allegations, the students have not stated a breach of contract claim as to this fee.

In sum, the students have sufficiently pled a breach of contract claim as to the Student Development Fee and Technology Fee, but not the CTA U-Pass Fee.[8]

### C.    Unjust Enrichment

Having concluded that the students adequately pled a breach of contract claim, we now consider whether the students sufficiently pled unjust enrichment in the alternative. To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that "the defendant has unjustly retained a benefit to the plaintiff's detriment and that [the] defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Hatcher v. Hatcher*, 2020 IL App (3d) 180096, ¶ 15 (citation omitted). Unjust enrichment is an equitable remedy. *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. Ct. App. 2005) (citation omitted). "'Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law.'" *Id.* (citation omitted). Therefore, when a contract governs the relationship between two parties, "'unjust enrichment has no application.'" *Id.* (citation omitted).

At the pleading stage, a party may plead breach of contract and unjust enrichment claims in the alternative. Fed. R. Civ. P. 8 (a)(3) (pleading must contain "a demand for the relief

---

[8] In the amended complaint, the students claim that they paid "a variety of [additional] mandatory course and supplies fees, and other miscellaneous fees." Further factual development is needed to determine the specific contractual terms of these fees and whether the students paid these fees to guarantee them access to on-campus facilities. To the extent the students paid these other mandatory fees to access on-campus facilities, the students may proceed on their claims as to these fees as well.

sought, which may include relief in the alternative or different types of relief"), (d)(3) ("[a] party may state as many separate claims or defenses as it has, regardless of consistency"); *Guinn,* 836 N.E.2d at 704. This means that a plaintiff may plead "'(1) there is [a] contract, and the defendant is liable for breach of it; and (2) if there is not [a] contract, then the defendant is liable for unjustly enriching himself at [the plaintiff's] expense.'" *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021) (citation omitted). But a party may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count. *Id.*

Further, where the existence of a contract between the parties is undisputed, an unjust enrichment claim will seldom survive a motion to dismiss. *See, e.g., Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) (unjust enrichment inapplicable where the parties' relationship governed by implied contract). An unjust enrichment claim may survive a motion to dismiss when the validity or the scope of the contract is difficult to determine, or if the claim at issue falls outside the contract. *See, e.g., Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004) (citations omitted); *see also Archon Constr. Co., Inc. v. U.S. Shelter, LLC*, 2017 IL App (1s) 153409, ¶ 39; *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998).

Here, in the unjust enrichment count of the complaint, the students incorporated by reference allegations of the existence of a contract between the parties. The students subsequently explained during briefing on the motion to dismiss that the incorporation was inadvertent. Unfortunately for the students, this pleading error prevents their unjust enrichment claim from going forward.

Absent this error, the students adequately pled an unjust enrichment claim in the alternative. The students allege that they paid tuition for an in-person educational experience, which the university failed to provide though it retained the benefit of tuition. Although Loyola argues that the students' unjust enrichment claim fails because the parties agree that a valid contract exists and governs the dispute, the parties disagree about whether the contract includes an implied promise to provide students in-person instruction and access to on-campus facilities. This disagreement alone is enough for the students' unjust enrichment claim to survive a motion to dismiss (again, were it not for the students' pleading error). Until the validity or the scope of a contract is determined, it is typically premature to dismiss an unjust enrichment claim.

Generally, plaintiffs are entitled to at least one chance to amend their complaint to cure an error in response to a district court's dismissal order unless amendment would be futile or otherwise unwarranted. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (citations omitted). The district court here concluded that any amendment would be futile in part because "[e]ven if plaintiffs had not incorporated the allegations of a contract, the unjust enrichment claim would still fail because the breach of contract claim fails." Given our holding that the students' allegations are sufficient to state a claim for breach of contract, the district court's reasoning for denying leave to amend no longer applies. Accordingly, on remand the district court should allow the students a chance to amend their unjust enrichment allegations.

## IV.    Conclusion

It bears repeating that this appeal is about whether the students have stated a claim for breach of contract and unjust enrichment. In reaching our decision, we do not speculate on the validity or applicability of any contractual defense, or damages.

For the reasons stated above, we AFFIRM IN PART and VACATE IN PART the district court's order and REMAND for further proceedings.

ST. EVE, *Circuit Judge*, concurring in part and dissenting in part.

I agree with the majority that the students do not bring educational malpractice or unjust enrichment claims. I respectfully part ways with the majority in its assessment of the viability of the students' breach of contract claim and would affirm the judgment of the district court.

I.

The relationship between private colleges and universities and their students occupies a specialized corner of Illinois contract law. Express contracts between students and schools are exceedingly rare. *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992). Nevertheless, Illinois courts have long recognized this relationship to be contractual. *Abrams v. Ill. Coll. of Podiatric Med.*, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1979). Consequently, "Illinois law generally recognizes an implied contract between a student and a school." *Bosch v. NorthShore Univ. Health Sys.*, 155 N.E.3d 486, 495 (Ill. App. Ct. 2019).[1]

---

[1] The majority points to a recent opinion by the D.C. Circuit, applying District of Columbia law, in a similar suit finding the students adequately pled breach of implied contract. *Shaffer v. George Washington Univ.*, 27 F.4th 754 (D.C. Cir. 2022). While Illinois and District of Columbia law are similar in the most general sense that both recognize "the relationship between a university and its student is contractual in nature" and "the terms set down in a university's bulletin become a part of that contract," the equivalence ends there. *Basch v. George Washington Univ.*, 370 A.2d 1364, 1366 (D.C. 1977), *see also Pride v. Howard Univ.*, 384 A.2d 31, 35 (D.C. Cir. 1978). Significantly, District of Columbia law on educational contracts between students and universities is comparatively less developed and nuanced, notably in terms of the distinction between and limitations of "specific promise" implied contracts and "fundamental promise" implied

Illinois courts typically acknowledge two types of implied contract between the student and the school: a "specific promise" implied contract and a "fundamental promise" implied contract.[2]

"Specific promise" implied contracts compose the overwhelming majority of educational contract cases in Illinois. *See, e.g.*, *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019); *Harris v. Adler Sch. of Pro. Psych.*, 723 N.E.2d 717, 719–21 (Ill. App. Ct. 1999); *Miller v. MacMurray Coll.*, 2011 IL App (4th) 100988-U, 2011 WL 10482615, at *7–9 (Ill. App. Ct. Oct. 5, 2011) (unpublished). The "specific promise" forming the basis of the contractual obligations in this category of cases is contained within the "catalogues, bulletins, circulars, and regulations of the institution made available" to the student. *Ross*, 957 F.2d at 416. To plead a breach of contract claim based on a "specific promise" implied contract, the student must identify the specific source of the purported implied contract and the precise promise the institution made. *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013); *see also, e.g.*, *Miller*, 2011 WL 10482615, at *7 (unpublished).

By contrast, the university's obligations arising out of "fundamental promise" implied contracts, *Bosch*, 155 N.E.3d at 495–97, are independent of written materials and, instead, are "conveyed by implication from the parties' conduct or

contracts. The *Shaffer v. George Washington Univ.* opinion offers little in the way of analytical guidance to our case applying Illinois law.

[2] The majority contends Illinois law does not distinguish educational contracts in this way, relying upon the absence of caselaw specifically identifying the distinction. Simply because a distinction has not been given a unique name or deliberately classified does not mean the distinction does not exist.

actions" *Brody v. Finch Univ. Health Scis./The Chi. Med. Sch.*, 698 N.E.2d 257, 265 (Ill. App. Ct. 1998). To survive dismissal on such a claim, the student need not cite any written materials at all. *Bosch*, 155 N.E.3d at 497. "Fundamental promise" implied contracts, however, account for a vanishingly rare subset of educational contract cases under Illinois law and are applied exceedingly narrowly. To this point, Illinois courts have limited this category to disputes involving matriculation and graduation. *See Brody*, 698 N.E.2d at 265–67 (finding historical practice created a "fundamental promise" implied contract to admit students who satisfied certain criteria to medical school); *Bosch*, 155 N.E.3d at 495–97 ("[T]he very foundation of the fundamental implied promise in a private school contract is that, if a student satisfactorily performs the coursework, she will get her degree."). There is apparently no precedent—certainly, neither the parties nor the majority have identified any—extending this narrow category to other aspects of the interaction between universities and their students. Relevant here, there is no indication Illinois courts would recognize this type of implied contract as to educational modality absent an express guarantee in a university publication.

The majority appears to blend a "specific promise" implied contract and a "fundamental promise" implied contract to in-person instruction in order to reach its holding. Regardless, the students have not adequately pled either, and the district court properly dismissed their breach of contract claim.

## II.

The obligations arising from a "specific promise" implied educational contract are rooted in the written materials published and distributed by the university. *Ross*, 957 F.2d at 416–

17. The majority leans heavily upon "reasonable inferences" derived from the language and content of various publications cited by the students. While plaintiffs are certainly entitled to the benefit of reasonable inferences from alleged facts on a motion to dismiss as a general matter, such inferences cannot supplement or form the basis of the specific contractual guarantees from universities to their students under Illinois law. Nor may the majority look to Loyola's conduct or past practice to supply the terms of a "specific promise" implied contract. *See, e.g.*, *Bosch*, 155 N.E.3d at 501 (analyzing, in the alternative, a breach of a "specific promise" implied contract). Instead, courts must look to the language of the written materials themselves with contractual obligations limited to those specific promises supported by "provisions in school materials … sufficiently definite in character to constitute a binding promise." *Id*. at 500–03. None of the language in any of the materials cited by the students is sufficiently definite to constitute a guarantee of in-person instruction or access.

Loyola's 2019–20 course catalog and online registration portal indeed contain language suggestive of in-person instruction, but nothing definite enough to amount to a contractual guarantee. Under "Room Requirements," various courses listed in the course catalog note, for example, "Lab," "General Classroom," or "Seminar." Some class descriptions also note "laboratory" or "in person" elements. The registration portal also permits students to filter classes by "Mode of Instruction" and "Location." None of this language, however, expressly guarantees students that a given course will take place in a specific type of classroom or will be conducted in a particular style. At most, these are informative descriptions and expressions of prediction or hope regarding class format which are unenforceable under Illinois law. *Abrams*, 395

N.E.2d at 1065 (holding the terms of a "specific promise" implied education contract do not include "unenforceable expression[s] of intention, hope or desire"); *see also Mulvey v. Carl Sandburg High Sch.*, 66 N.E.3d 507, 514 (Ill. App. Ct. 2016); *Wilson v. Ill. Benedictine Coll.*, 445 N.E.2d 901, 940 (Ill. App. Ct. 1983). Indeed, particularly in the context of class registration, it would be odd to treat every aspect of a class description as an enforceable contractual promise. Suppose, for example, a particular class initially slated for a general classroom is severely under-enrolled and moved to a seminar room or ultimately not offered at all that semester. Similarly, the registration portal permits students to select by instructor, but what if a professor falls seriously ill between the registration period and the start of the semester and is unable to teach the course? The registration period is inevitably fluid and to some degree unpredictable. The plain text of the course catalog and registration porthole simply does not permit the students to extract a contractual obligation for in-person instruction.

So, too, with the disparity in pricing between Loyola's traditional undergraduate programs and its online courses and the descriptions of same. Different price points tell us next to nothing about the specific conditions of each program, only that they do not cost the same. The students append a description of Loyola's online program, specifically the "Online Definitions." However, while this publication is certainly informative about the contours of various online courses, it is entirely silent as to the nature of Loyola's traditional programs. Only by negative implication—which, as discussed above, may not form the basis of a specific promise—do the "Online Definitions" speak to Loyola's traditional undergraduate courses. Notably absent from any of these materials is a

specific, written promise that Loyola's traditional courses will occur in-person.

The descriptions of the Student Development Fee and the Technology Fee also fall short.[3] The Student Development Fee "funds multiple programs and services for students depending on the term" including "the Wellness Center, Halas membership, shuttle bus, and 8-ride program" and "a few special events organized by the students and administrators." This language merely describes what the funding is to be used for; Loyola neither mentions nor guarantees in-person education, amenity access, or degree of access. Indeed, the "depending on the term" language underscores the equivocal nature of the description. Like the course catalog and the registration portal, the description of the Student Development Fee is better understood as an unenforceable description of hope or intention.

Similarly, none of Loyola's statements regarding the Technology Fee are sufficiently definite enough to amount to an enforceable promise. The "Acceptable Use of Electronic University Resources" policy states "[c]omputing, networking, telephony and information resources at the University … are available to support students" and Loyola "encourages and promotes the access and use of these resources." While resources are "available" and "access and use" "encourage[d]," Loyola does not specify how they are to be available, accessed, and used. Indeed, many of the resources funded by the Technology Fee—such as software and student technology support—were presumably available during remote

---

[3] The majority finds, and I agree, that the CTA U-Pass fee does not give rise to an enforceable contractual guarantee.

instruction. While the "Acceptable Use of University Computer Labs" policy is slightly more definite in assuring "[a]ccess and use of public-access facilities" such as "computer centers and computer labs," this language does not amount to a guarantee of unfettered access regardless of circumstance. For example, some or all of Loyola's computer labs may not be open 24 hours a day or during holidays, and this policy language certainly does not obligate Loyola to grant student access to the computer labs during periods where they are closed.

None of the written materials the students cite contain a specific guarantee of in-person education or amenity access sufficient to maintain an implied contract under Illinois law.

III.

While Illinois courts have not extended "fundamental promise" implied contracts beyond the realm of matriculation and graduation to educational modality, the majority would expand the law in just this way. The majority asserts that, based on Loyola's purported history of providing in-person instruction and access to on-campus facilities[4] and inferences

---

[4] Although a minor point, it bears mentioning this assertion is entirely absent from the operative pleading or any of the attached and incorporated documentation. In their appellate reply brief, the students claim, "For more than 150 years, Loyola provided students in-person, on-campus instruction and appurtenant campus benefits." The portions of the amended complaint cited by the students, however, do not support this assertion, either directly or by reasonable inference. At most, the students plead Loyola provided in-person instruction and access to on-campus facilities during the 2019–20 academic year up until March 13, 2020. From this, the dissent asks us to infer Loyola always did so. Moreover, the amended complaint is wholly silent as to Loyola's historical practices under emergent

gleaned from the written materials cited above, the university was contractually obligated to provide students an in-person experience during the first three months of the COVID-19 pandemic. Federal courts sitting in diversity, such as ours, "must exercise care and caution" when interpreting state law. *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517 (7th Cir. 2021). This is particularly true "when given a choice between an interpretation of state law which reasonably restricts liability[ ] and one which greatly expands liability," in which case federal courts are encouraged to take a restrictive approach to liability and "choose the narrower and more reasonable path (at least until the state Supreme Court tells us differently)." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 935–36 (7th Cir. 2007) (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc)) (cleaned up). Adopting the majority's approach and permitting "fundamental promise" implied contract claims to proceed outside the limited scope of matriculation and graduation has the potential to create significant new fronts of liability, even beyond the context of COVID-19 tuition cases to which every private university in Illinois is vulnerable. It is not difficult to imagine multitudes of campus conditions and experiences, supported by historical practice, to which future litigants might seek to apply the majority's

circumstances, which is salient in determining whether Loyola's response to the COVID-19 pandemic departed from its past practice. While it is entirely plausible Loyola did, in fact, provide such services continuously and for the entirety of its history, at this juncture we are limited to only those facts alleged in the pleading and those of which we can take judicial notice. We cannot extract a factual assertion about Loyola's historical practices, or its practices under adversity, from an assertion about Loyola's actions during the approximately six months preceding the COVID-19 pandemic.

approach. It is for the Illinois courts, however, not the federal bench, to expand (or not) the limits of "fundamental promise" implied contracts.

*      *      *

I would affirm the judgment of the district court in dismissing both the students' breach of contract and unjust enrichment claims with prejudice. I therefore respectfully dissent.