**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3820-21

WAWA, INC.,

     Plaintiff-Appellant,

v.

STARR SURPLUS LINES
INSURANCE COMPANY,
CONTINENTAL CASUALTY
COMPANY, CRUM &
FORSTER SPECIALTY
INSURANCE COMPANY,
EVEREST INDEMNITY
INSURANCE COMPANY,
BEAZLEY SYNDICATES AFB
FOR AND ON BEHALF OF
LLOYD'S UNDERWRITER
SYNDICATE NO. 2623 AFB,
LONDON, ENGLAND AND
LLOYD'S UNDERWRITER
SYNDICATE NO. 0623 AFB,
LONDON, ENGLAND, HISCOX
SYNDICATES FOR AND ON
BEHALF OF LLOYD'S
UNDERWRITER SYNDICATE
NO. 0033 HIS, LONDON,
ENGLAND, XL CATLIN FOR
AND ON BEHALF OF XL
CATLIN INSURANCE COMPANY
UK LIMITED, LIRMA C7509,

CONVEX INSURANCE UK
LIMITED (& AFFILIATE CONVEX
RE LTD) FOR AND ON BEHALF
OF CONVEX INSURANCE UK
LIMITED, LIRMA C9800, NEON
UNDERWRITING LIMITED FOR
AND ON BEHALF OF LLOYD'S
UNDERWRITER SYNDICATE NO.
2468 NEO, LONDON, ENGLAND, and
ANTARES SYNDICATE FOR AND
ON BEHALF OF LLOYD'S
UNDERWRITER SYNDICATE NO.
1274 AUL, LONDON, ENGLAND,

      Defendants-Respondents.

_____

Argued November 15, 2023 – Decided January 5, 2024

Before Judges Currier, Firko, and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0688-21.

Lisa M. Campisi argued the cause on behalf of appellant (Blank Rome LLP, attorneys; Stephen M. Orlofsky, Lisa M. Campisi, Michael Ray Darbee, and Helen K. Michael (Blank Rome LLP) of the District of Columbia and Maryland bars, admitted pro hac vice, on the briefs).

Peter G. Verniero argued the cause on behalf of respondents Starr Surplus Lines Insurance Company, Continental Casualty Company, Beazley Syndicates AFB for and on behalf of Lloyd's Underwriter Syndicate No. 2623 AFB, London, England, and Lloyd's Underwriter Syndicate No. 0623 AFB, London, England, Hiscox Syndicates for and on behalf of

2

Lloyd's Underwriter Syndicate No. 0033 HIS, London, England, XL Catlin Insurance Company UK Limited, Neon Underwriting Limited for and on behalf of Lloyd's Underwriter Syndicate No. 2468 Neo, London, England, and Antares Syndicate for and on behalf of Lloyd's Underwriter Syndicate No. 1274 AUL, London, England (Sills Cummis & Gross, PC and Mound Cotton Wollan & Greengrass LLP, attorneys;   Peter G. Verniero, Michael S. Carucci, Costantino P. Suriano, Pejman Nassi, and Benjamin R. Messing, of counsel and on the briefs).

Gary Scott Kull argued the cause on behalf of respondent Crum & Forster Specialty Insurance Company (Kennedys CMK LLP, attorneys, join in the brief of respondents Starr Surplus Lines Insurance Company, Continental Casualty Company, Beazley Syndicates AFB for and on behalf of Lloyd's Underwriter Syndicate No. 2623 AFB, London, England, and Lloyd's Underwriter Syndicate No. 0623 AFB, London, England, Hiscox Syndicates for and on behalf of Lloyd's Underwriter Syndicate No. 0033 HIS, London, England, XL Catlin Insurance Company UK Limited, Neon Underwriting Limited for and on behalf of Lloyd's Underwriter Syndicate No. 2468 Neo, London, England, and Antares Syndicate for and on behalf of Lloyd's Underwriter Syndicate No. 1274 AUL, London, England).

Victoria Kraft Pagos (Zelle LLP), Matthew Gonzalez (Zelle LLP) of the New York bar, admitted pro hac vice, and Eric Caugh (Zelle LLP) of the Minnesota bar, admitted pro hac vice, attorneys for respondents Convex Insurance UK Ltd. and Everest Indemnity Insurance Company (Victoria Kraft Pagos, Matthew Gonzalez and Eric Caugh, of counsel and on the brief).

3

Michael S. Levine (Hunton Andrews Kurth LLP) of the District of Columbia, Massachusetts, New York, and Virginia bars, admitted pro hac vice, argued the cause on behalf of amicus curiae United Policyholders (Kevin Vincent Small (Hunton Andrews Kurth LLP), Michael S. Levine and Lorelie S. Masters (Hunton Andrews Kurth LLP) of the District of Columbia and New York bars, admitted pro hac vice, attorneys; Kevin Vincent Small, Michael S. Levine and Lorelie S. Masters, on the brief).

Flynn Watts, LLC, attorneys for amicus curiae Medical Society of New Jersey (Michael A. Moroney, on the brief).

PER CURIAM

In this insurance coverage dispute based on claims arising out of the COVID-19 pandemic and the Executive Orders (EO or EOs) issued in response to the pandemic, plaintiff Wawa, Inc. (Wawa) appeals from the June 30, 2022 order dismissing its first amended complaint with prejudice against defendants Starr Surplus Lines Insurance Company (Starr), Continental Casualty Company (Continental), Crum & Forster Specialty Insurance Company, Everest Indemnity Insurance Company (Everest), Beazley Syndicates AFB for and on behalf of Lloyd's Underwriter Syndicate No. 2623 AFB, London, England, and Lloyd's Underwriter Syndicate No. 0623 AFB, London, England (Beazley), Hiscox Syndicates for and on behalf of Lloyd's Underwriter Syndicate No. 0033 HIS, London, England (Hiscox), XL Catlin for and on behalf of XL Catlin Company

4

UK Limited, Lirma C7509 (XL Catlin), Convex Insurance UK Limited (& Affiliate Convex RE LTD) for and on behalf of Convex Insurance UK Limited, Lirma C9800 (Convex), Neon Underwriting Limited for and on behalf of Lloyd's Underwriter Syndicate No. 2468 NEO, London, England (Neon) and Antares Syndicate for and on behalf of Llyod's Underwriter Syndicate No. 1274 AUL, London, England (Antares).

Wawa sought a declaration that defendants should pay the lost business income and extra expenses for losses suffered due to the global coronavirus pandemic and related governmental actions across several states, including New Jersey, pertaining to stay-at-home and business closure orders. Wawa contended defendants breached their policies by denying coverage.

Wawa argues it suffered a direct physical loss of damages to its properties, triggering coverage under the Real and Personal Property, Business Interruption, Extra Expense, Expenses to Reduce Loss, and Contingent Business Interruption for Attraction Properties provisions of its Policies. Wawa also contends the Contamination Exclusion and Mold, Mildew and Fungus Clause and Microorganism Exclusion provisions in its Policies do not apply and are violative of New Jersey public policy. The trial court rejected those arguments relying on this court's decision in Mac Prop. Grp., LLC v. Selective Fire & Cas.

A-3820-21

Ins. Co., 473 N.J. Super. 1 (App. Div. 2022), in which we found similar claims were not covered under almost identical insurance policies.

We granted leave to Medical Society of New Jersey and United Policyholders to file amici curiae briefs, which support Wawa's contentions. Because our holdings and reasonings in Mac Property apply to Wawa's Policies, we affirm the order dismissing Wawa's first amended complaint with prejudice.

I.

The facts are largely derived from Wawa's sixty-three-page first amended complaint. Wawa owns and operates a chain of more than 900 convenience retail stores, over 600 offering gasoline, located in New Jersey, Pennsylvania, Delaware, Maryland, Virginia, Florida, and Washington, D.C. Most locations are open twenty-four hours a day, 365 days each year. Wawa stores offer fresh and packaged food, built-to-order and ready-made items, beverages, and snacks.

Wawa purchased high-end, all risk commercial liability Master Policies (Policies) from defendants for the period from January 1, 2020, to January 1, 2021. Defendants provided coverage to Wawa on a quota-share basis.[1] The

---

[1] A "quota share program" is a type of reinsurance where the reinsurer and ceding insurer enter a contract to share a prearranged proportionate percentage of any loss sustained on the insured property. See 7 Daniel W. Gerber et al., New Appleman on Insurance Law Library Edition § 71.02[4][a] (2023 ed.);

Policies contain nearly identical provisions and amendatory endorsements. The

Covered Cause of Loss provision reads:

> **Loss or Damage Insured[2]**
>
> This policy insures against all risk of direct physical loss or damage to property . . . .

The **Real and Personal Property** provisions insure:

> All real and personal property while such property is located anywhere within the territorial limits of this policy . . . including the Insured's liability for such property and including the costs to defend any allegations of liability for loss or damage to such property. . . .

The Policies provide coverage for Business Interruption and Extra

Expense:

> **Business Interruption**
>
> 1. Loss due to the necessary interruption of business conducted by the Insured, including all interdependencies between or among companies owned or operated by the Insured resulting from loss or damage insured herein and occurring during the term of this policy to real and/or personal property. . . .

---

Cent. Nat'l Ins. Co. v. Devonshire Coverage Corp., 426 F. Supp. 7, 11 n.5 (D. Neb. 1976).

[2] References in bold are in the original.

**Extra Expense**

1. Extra Expense incurred by the Insured in order to continue as nearly as practicable the normal operation of the Insured's business following loss or damage insured herein and occurring during the term of this policy to real and/or personal property. . . .

With respect to expenses to reduce loss coverage, the Policies provide:

**Expense to Reduce Loss:**

This policy also insures such expenses as are necessarily incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.

The Starr and Continental Policies adopt the Policies' Contingent Business

Interruption provision at 8.A.1., which in relevant part provide:

**Extensions of Coverage**

**A.     Contingent Business Interruption/Contingent Extra Expense, Service Interruption/Off Premises Power, Impounded Water**

This policy insures loss resulting from or caused by loss or damage insured herein to the following:

1. **Contingent Business Interruption/ Contingent Extra Expense:** Property, including **Attraction Properties**, that directly or indirectly prevents a supplier (including suppliers of any tier) of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents customers (including customers of any tier) of goods

A-3820-21

and/or services from the Insured from accepting the Insured's goods and/or services.

**Attraction Properties** is defined as:

Properties, not owned or operated by the Insured, which attract potential customers to the vicinity of the Insured's location.

However, the Hiscox, Beazley, XL Catlin, Antares, and Neon policies amended the Master Policies' Contingent Business Interruption provision at 8.A.1. to remove the Attraction Property coverage. The provision at 8.A.1, as amended by Endorsement 3, provides as follows:

**Extensions of Coverage**

A. This policy insures loss resulting from or caused by loss or damage insured herein to the following:

1. CONTINGENT TIME ELEMENT: If direct physical loss or damage to the real or personal property of: (1) the Insured's **Tier 1 supplier** or the Insured's **Tier 2 supplier** or (2) the Insured's **Tier 1 customer** or the Insured's **Tier 2 customer**, is damaged by a Cause of Loss, not otherwise excluded, under this Policy, and such damage:

a. wholly or partially prevents the Insured's **Tier 1 supplier** from supplying their goods and/or services to the Insured,

or

9

b. wholly or partially prevents the Insured's **Tier 1 customer** from accepting the Insured's goods and/or services; then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property. The property of any supplier or any customer which sustains loss or damage must be of the type of property which would be Insured Property under this Policy.

Notwithstanding the foregoing, this Additional Time Element Coverage does not apply to:

a. Any supplier of electricity, gas, fuel, steam, water, refrigeration, telecommunications or sewerage service, or

b. The Insured's customers, if the Insured is a supplier of electricity, gas, fuel, steam, water, refrigeration, telecommunications or sewerage service. . . .

The Policies' Loss Provisions define the duration of benefits available under the Business Interruption, Extra Expense, and Contingent Business Interruption coverage and provides

**Loss Provisions**

A. Period of Recovery

The length of time for which loss may be claimed is referred to as the period of recovery and:

10

A-3820-21

1. shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy;

2. shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

**and**

3. such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

> (a) the date on which the liability of the **Insurer** for loss or damage would otherwise terminate; or
>
> (b) the date on which repair, replacement or rebuilding of the property that has been damaged is actually completed and the Insured has resumed normal operations.
>
> but in no event for more than three hundred sixty-five (365) consecutive days thereafter from said later commencement date. . . .

B. If the Insured can reduce the loss resulting from the interruption of business:

> 1. by a complete or partial resumption of operations of the property insured, whether damaged or not; or

11

A-3820-21

2. by making use of stock, merchandise, or other property insured herein;

Such reduction shall be taken into account in arriving at the amount of loss hereunder.

Wawa's claim also implicates three exclusions in the Policies. The first is an **Authorities Endorsement** contained in the Starr Policy, which states:

Except as specifically stated in this policy or endorsement attached thereto, the company [the Insurer] shall not be liable for loss, damage, costs, expenses, fines, or penalties incurred, sustained by or imposed on the Insured at the order of any Government Agency, Court, or other Authority arising from any cause whatsoever.

The Hiscox, Beazley, XL Catlin, Antares, and Neon Policies each contain two identical policy-specific exclusionary endorsements triggered by Wawa's claim. The first one excludes coverage for Contamination as follows:

### ADDITIONAL LIMITATIONS AND CONDITIONS ENDORSEMENT (STANDARD)

. . .

III. SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION CLAUSE

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

1. any loss, damage, cost or expense; or

12

2. any increase in insured loss, damage, cost or expense; or

3. any loss, damage, cost, expense, fine, penalty or other sum which is incurred, sustained or imposed by, or by the threat of, any judgment, order, direction, instruction or request of, or any agreement with, any court, government agency, any public, civil or military authority or any other person (and whether or not as a result of public or private litigation);

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination, or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

1. seepage of, or pollution and/or contamination by, anything . . . ; and

2. the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

The second exclusionary endorsement contained in the Hiscox, Beazley, XL Catlin, Antares, and Neon Policies concerns Microorganisms.

### MOLD, MILDEW AND FUNGUS CLAUSE AND MICROORGANISM EXCLUSION

### (Time Limit and Sublimit)

A-3820-21

In consideration of the premium paid, and subject to the Exclusions, Conditions and Limitations of the Policy to which this Extension is attached, and also to the following additional Exclusion, and specific Limitations, this Policy is extended to insure physical loss or damage to insured property by mold, mildew or fungus only when directly caused by physical loss or damage to insured property by a peril insured by this Policy occurring during the period of this Policy.

## Limitations

1. The said property must otherwise be insured under this Policy for physical loss or damage by that peril. . . .

. . . .

3. Regardless of circumstance or other Policy provisions, the maximum amount insured and payable under this Policy for all mold, mildew or fungus caused by or resulting from such peril is USD 5,000,000 per occurrence for all parts of any claim. This sublimit applies to all sections or extensions of the Policy combined under which any claim arises or is made and shall be a part of and not in addition to the policy limit.

## Exclusion

Except as set forth in the foregoing, this Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

> mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

14

A-3820-21

This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

Beginning in early March 2020, Governor Murphy issued a series of EOs to address the COVID-19 pandemic. EO 103, issued on March 9, 2020, declared a public health emergency and state of emergency in New Jersey. Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (April 6, 2020). EO 104, issued on March 16, 2020, among other things, limited the scope and hours of operation for non-essential business operations. Exec. Order No. 104 (Mar. 16, 2020), 52 N.J.R. 550(a) (Apr. 6, 2020). Wawa was considered an essential business operation. EO 107, which became effective March 21, 2020, implemented "social mitigation strategies" requiring "every effort to reduce the rate of community spread of the disease." Exec. Order No. 107 (Mar. 21, 2020) 52 N.J.R. 554(a) (Apr. 6, 2020).

As a result of the COVID-19 pandemic, Wawa sought coverage under defendants' policies alleging it suffered a substantial loss of business and income when the EOs were in effect. Wawa claimed its covered premises were rendered nonfunctional and unusable for on-the-go food services, which deprived Wawa

of the physical use intended for its premises. Wawa also averred that its covered premises "suffered physical damage or the imminent threat of physical damage" due to the impact the coronavirus had on the airspace and other physical components of the premises.

Defendants declined coverage because they alleged the Policies did not cover the COVID-19 related losses. In addition, defendants alleged coverage was barred by the Policies' Contamination and Microorganism Exclusions.

In response, on March 8, 2021, Wawa brought a lawsuit against defendants in the Law Division including counts for declaratory judgment and breach of contract. On May 7, 2021, defendants moved to dismiss under Rule 4:6-2(e). On February 17, 2022, the trial court denied defendants' motion to dismiss without prejudice.

On February 22, 2022, Wawa filed its first amended complaint, which is the subject of the order under review, alleging the presence of COVID-19 rendered its premises nonfunctional for on-the-go food services for several months. Wawa reiterated its allegations that its covered premises "suffered physical damage or the imminent threat of physical damage" due to the impact of the coronavirus on its airspace and other physical components of its premises.

On March 24, 2022, defendants moved to dismiss Wawa's first amended complaint with prejudice, arguing the plain language of the Policies did not cover the losses at issue. Wawa opposed defendants' motions and argued it was forced to suspend or reduce operations at its premises and contended the threats and presence of coronavirus rendered its premises unsafe and unfit for its essential functions. Wawa maintained it was forced to temporarily close its stores each time an employee tested positive for COVID-19, and nearly all of Wawa's stores had at least one employee test positive for COVID-19 during or after March 2020, satisfying the pleading standard.

On June 23, 2022, the trial court conducted oral argument on defendants' motions. Following argument, the trial court reserved decision. On June 30, 2022, the trial court granted defendants' motions to dismiss Wawa's first amended complaint with prejudice and issued an order accompanied by a comprehensive written opinion. The trial court found there was no direct physical loss of or damage to Wawa's premises, "despite the semantics in the language used in the [first amended] complaint."

The trial court found the pleading itself "fail[ed] to allege physical loss or damage to covered property[,] which is a pre-condition to triggering coverage under the insurance policies at issue in this case." The trial court concluded our

17

holding in Mac Property was dispositive of the issues presented; and that there was "no need to repair or replace property as required in calculating the time-period for any business interruption or extra expense claim." This appeal followed.

## II.

Our review of a Rule 4:6-2(e) motion to dismiss for failure to state a claim upon which relief can be granted is de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). We "must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). To determine the adequacy of a pleading, we must decide "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co. Inc., 109 N.J. 189, 192 (1988)).

When "interpreting insurance contracts, we first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)). The policy

18

must "be enforced as written when its terms are clear" so the "expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (citations omitted).

If an insurance policy is ambiguous, courts will construe the terms in favor of the insured. Mac Prop., 473 N.J. Super. at 18 (citation omitted). This doctrine only applies if there is a genuine ambiguity in the contract, and "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273-74 (2001)).

"Exclusions in insurance contracts 'are presumptively valid and will be given effect if [they are] "specific, plain, clear, prominent, and not contrary to public policy."'" Mac Property, 473 N.J. Super. at 35 (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). Further, exclusionary provisions "containing 'an anti-concurrent or anti-sequential clause' ha[ve] been interpreted to unambiguously bar coverage for losses resulting in any manner from an excluded cause." Id. at 37 (quoting Wear v. Selective Ins. Co., 455 N.J. Super. 440, 454-55 (App. Div. 2018)). "Thus, coverage is excluded for a loss attributable to a given cause 'regardless of whether any other cause, event,

material or product contributed concurrently or in any sequence' to that loss." Ibid. (quoting Wear, 455 N.J. Super. at 454).

## III.

On appeal, Wawa contends: (1) the trial court's "physical alteration" requirement disregards that the Policies insure against either "physical loss" or "physical damage;" (2) the trial court disregarded the Policies' coverage for "all risks of physical loss or damage;" and (3) the trial court improperly discounted Wawa's allegations in its first amended complaint that coronavirus physically altered its insured premises and was ultimately the cause of Wawa's losses.

Wawa's arguments are almost identical to those of the claimants in Mac Property. In Mac Property, several plaintiffs sought declaratory judgments enforcing Business Income and Civil Authority provisions to cover losses they incurred during the COVID-19 pandemic after being forced to shut down or restrict their operations. 473 N.J. Super. at 9-10. We rejected their claim, holding the term "direct physical loss of or damage to" was "not so confusing that average policyholders . . . could not understand that coverage extended only to instances where the insured property has suffered a detrimental physical alteration . . . or there was a physical loss of the insured property." Id. at 21-22.

A-3820-21

We concluded the motion courts appropriately dismissed the plaintiffs' complaints with prejudice under Rule 4:6-2(e).  Id. at 40.

In reaching that determination, we noted there were

> scores of federal and state appellate-level courts that . . . addressed the issues raised by the plaintiffs and [t]he overwhelming majority of them . . . granted defendant insurers' motions to dismiss complaints seeking insurance coverage for business losses due to government orders barring or curtailing [the insureds'] operations . . . to curb the . . . pandemic because the losses were not due to physical loss or damage to their insured premises.
>
> [Id. at 26-27.]

While New Jersey has "adopted a broad notion of the term 'physical'" when the word is paired with another term, such as "physical injury," the resulting phrase means "'detrimental alteration,' or 'damage or harm to the physical condition of a thing.'"  Id. at 20 (alteration in original) (quoting Phibro Animal Health Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 446 N.J. Super. 419, 437-38 (App. Div. 2016)).  In Mac Property, we found it significant there was no damage to any of the equipment or property of the businesses.  Id. at 23. Specifically, none of the plaintiffs alleged COVID-19 was present on their properties, rendering them uninhabitable.  Ibid.  Instead, their losses were due to "restrictions imposed by [EOs] to curb the COVID-19 pandemic."  Id. at 41.

21

Citing Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266, 1277 (Mass. 2022), we noted the distinction between "loss" and "damage" argued by the claimants in that case was "irrelevant . . . because the contention 'ignored' the fact that the relevant coverage provisions provided that the 'loss itself' must be a 'direct physical' loss, clearly requiring a direct, physical deprivation of possession." Mac Property, 473 N.J. Super. at 26 (alteration in original). We adopt the same rationale here.

Wawa did not suffer any "direct physical loss or damage" to its properties. Like the plaintiffs in Mac Property, Wawa did not lose its physical capacity to operate. None of Wawa's properties required any repairs, rebuilding, or replacement due to damage. Further, there was no physical alteration making Wawa's covered properties dangerous to enter. Therefore, defendants were not required to extend coverage under the Loss or Damage Insured and Real and Personal Property provisions of the Policies as there was no "direct physical loss or damage."

While we did not specifically address the language in the plaintiffs' Extra Expense provision in Mac Property, 473 N.J. Super. at 22, the coverage is inapplicable here for two reasons. First, the Extra Expense provision also requires a "direct physical loss of or damage to property," which did not occur

here, as discussed above, and also references coverage during restoration periods. Second, our analysis in Mac Property relied, in part, on a Massachusetts Supreme Court case, which examined similar Business Income and Extra Expense provisions and determined that coverage was not triggered because there was no physical loss or damage to the plaintiffs' properties. Mac Property, 473 N.J. at 25-27.

Here, Wawa's Policies clearly and unambiguously require a suspension of a claimant's business be caused by a physical tangible alteration to the property. Applying the holding in Mac Property, it follows that the Policies should be applied as they are written. We interpret the Policies' requirement of physical loss of or damage to property to require "a direct, physical deprivation of possession" of the property. Id. The EOs may have barred Wawa from providing certain limited food services, but the stores remained open during the pandemic and Wawa was not physically deprived of possession.

We note Wawa instead contends "physical alteration" is not required and "physical loss or damage" could encompass an insured property's loss of functionality. Wawa cites Port Authority of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226 (3d Cir. 2002), for the proposition that "New Jersey courts have interpreted the physical loss or damage requirement broadly, holding that

the loss of use, loss of access, loss of value, or uninhabitability of property constitutes physical loss or damage." However, Port Authority substantially predates the decision in Mac Property, and in any event is not controlling.[3]

The "physical alteration" requirement is further supported by the Policies' "period of restoration" language. The Policies state the recovery period concludes on "the date on which repair, replacement or rebuilding of the property that has been damaged is actually completed and the Insured has resumed normal operations." This demonstrates a "direct physical loss of or damage" to property means a physical alteration that can be fixed through "repair" or "replacement." As we held in Mac Property, the period of restoration would be "meaningless if the plaintiff were allowed to recover for purely economic losses in the absence of any such damage or destruction." Mac Property, 473 N.J. Super. at 23.

---

[3] In Port Authority, the Third Circuit held that an insured which owned a building with "asbestos . . . present in the components of a structure, but . . . not in such form or quantity as to make the [structure] unusable" had not suffered a "loss" under the insured's all risk policy. Port Authority, 311 F.3d. at 236. Only the actual release of the asbestos fibers or the "imminent threat" of such a release could qualify as a "loss" under the all-risk policy. Ibid. The Third Circuit recently affirmed this principle in Wilson v. USI Ins. Serv. LLC, 57 F.4th 13, 138 (3d Cir. 2023). We find in the record no imminent threat of a "release" which would eliminate or destroy the functionality of plaintiff's property or render it useless or uninhabitable. Id. at 142.

A-3820-21

Wawa contends the loss provision that states, "if the Insured can reduce the loss resulting from the interruption of business:  by a complete or partial resumption of operations of the property insured, **whether damaged or not** [. . .] such reduction shall be taken into account in arriving at the amount of loss hereunder" confirms that recoverable losses include operating expenses that have impaired utility.  But this provision does not eliminate the physical alteration requirement; it merely discusses mitigation of damages.

We also reject Wawa's argument that it is entitled to discovery and to serve expert reports to show the coronavirus physically altered its property. Defendants counter Wawa never alleged that coronavirus was on its property, and the trial court was not required to accept as true Wawa's theory about the "adulteration of airspace and attachment to surfaces causing physical damage" because no expert opinion or scientific study could overcome the lack of physical damage to its convenience stores.

In Mac Property, we asserted that "the mere presence of the virus on surfaces [does] not physically alter the property, nor [does] the existence of airborne particles carrying the virus."  Mac Property, 473 N.J. Super. at 24 (quoting Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327, 337 (7th Cir. 2021)). Thus, based on our holding in Mac Property, we reject Wawa's

contention that respiratory particles—droplets and airborne aerosols—are physical substances that could have physically and tangibly altered its insured property. Since the Policies here require physical tangible alteration to property, and we have determined that coronavirus on surfaces does not satisfy the definition of physically altered property, factual and expert discovery would be futile.

We also reject Wawa's argument that the Policies cover the mere "risk of" physical loss or damage regardless of whether the coronavirus was actually present or caused harm to its store locations. As stated, the Policies provide coverage "against all risk of direct physical loss or damage to property . . . except as hereinafter excluded." Again, that language only becomes relevant if there was a physical alteration to the property in the first place. We are unpersuaded by Wawa's argument that "all risk" means "all loss" or "every risk" because such an interpretation is inconsistent with the Policies taken as a whole.

Moreover, the Contamination Exclusion and Microorganism Exclusion provisions in defendants' policies are unambiguous and apply to preclude coverage Wawa is seeking. Although the trial court did not address these exclusions, we may affirm on any basis supported by the record as long as the opposing parties had an opportunity to be heard on the issue. N.J. Div. of Child

Prot. and Perm., 444 N.J. Super. 325, 333-34 (App. Div. 2016) (quoting State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011)).  Here, defendants raised these issues in their motions to dismiss, Wawa responded, and the parties' merits briefs address the argument.

As we explained in Mac Property, "it is unequivocal that the virus was the sole reason the [EOs] were issued."  Id. at 40.  The Policies, like some of those in Mac Property, contained a Contamination Exclusion, which includes a virus exclusion provision, "that included anti-concurrent and anti-sequential causation language, undoubtedly barring coverage" because the COVID-19 virus allegedly contributed to plaintiffs' business losses.  See Ibid.

The Policies here contain Contamination Exclusions for "**any kind of pollution and/or contamination**, or threat thereof, whether or not caused by or resulting from a peril insured."  The Contamination Exclusions reject coverage for "steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up, or removal of such seepage or pollution and/or contamination."

Wawa argues its "reasonable expectation" that the Contamination Exclusion should be limited to "traditional environmental hazards" be construed to warrant coverage.  However, the Contamination Exclusion is clear and

unambiguous, and therefore, it is unnecessary for us to consider plaintiff's subjective interpretation. See Passaic Valley Sewerage Com'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 608 (2011) (discussing how an insured's reasonable expectations only matter when the court finds the relevant language ambiguous).

Wawa posits that the Microorganism Exclusion is inapplicable because the coronavirus is neither "mold," "mildew," "fungus," "spores," nor a "microorganism," and the exclusions do not bar coverage for all substances whose presence pose an actual or potential threat to human health. But courts considering the exclusion have found the term "microorganism" may include the coronavirus because the "relevant language is deliberatively broad, covering microorganisms 'of any type, nature, or description,'" and applying generally to "any substance whose presence poses an actual or potential threat to human health," which encompasses coronavirus. See Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins., 20 F.4th 303, 310 (7th Cir. 2021). The plain language of the Microorganism Exclusion is not ambiguous and bars Wawa's claims because it clearly states the microorganism can be of "**any type**" including "**any**" substance that poses a potential threat to human health.

Finally, Wawa argues that the Authorities Exclusions contained in the Starr and Everest Policies do not bar its claim for coverage because Wawa does not rely on government orders to establish its claim for "direct physical loss or damage" of covered property. The Starr Policy contains an Authorities Endorsement, which precludes the insurer's liability "for loss [or] damage [. . .] sustained by or imposed on the Insured at the order of any Government Agency, Court, or other Authority arising from any cause whatsoever."

The plain language makes clear that losses are excluded when they are sustained by or imposed on the Insured "at" the government's order "arising from any cause." Although Wawa contends it does not rely on government orders to support its claim, its first amended complaint asserts that Wawa is seeking "losses suffered due to the pandemic **and the related governmental actions** (including the various governmental stay-at-home and business closure orders)." Therefore, Starr's Authorities Exclusion bars Wawa's claim.

Everest Policy's Authorities Exclusion bars coverage for "fines, penalties and expenses directly attributable to such fines and penalties incurred or sustained by or imposed on Insured at the order of any government agency, court or other authority arising from any cause whatsoever." While Wawa correctly notes that its claim is not barred under Everest Policy's Authorities Exclusion

29

because there were no fines or penalties imposed, Wawa's claim is nevertheless barred because there was no direct physical loss or damage to its covered property.

We conclude Wawa's remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION